THE STATE ex rel. MOSCONI et al. v. MARONEY et al.

In Banc, November 24, 1905.

1. **ELECTION JUDGES: Removal: No Charges or Hearing.** The board of election commissioners of the city of St. Louis have no authority, under the act of 1903, to remove judges and clerks of election, duly appointed, without an assignment of charges against them and without a reasonable opportunity to them to be heard upon the charges assigned.

2. ————: ————: **Public Office.** Judges and clerks of election duly appointed to positions created by law; whose right and authority to perform the duties incumbent upon them emanate from the legislative branch of the State government; the duration of whose term (two years) is definitely fixed by law; whose duties are plainly marked out, which are clearly for the benefit of the public; whose emoluments of the office so held by them, as well as certain privileges and immunities, such as exemption from jury service, are provided for, are public officers within the meaning of the term "public office," which embraces "the ideas of tenure, duration, emolument and duties."

3. ————: ————: ————: **Legislative Construction.** Where the statute says that judges and clerks of election shall, for any of the causes enumerated therein, be "removed from office," that is a legislative construction that they are public officers.

State ex rel. v. Maroney.

4. ———: Public Officer: Removal: Charges and Hearing. It is an elementary and fundamental principle that no one can be passed upon, either in his person or estate, without being first given an opportunity to be heard.

5. ———: ———: ———: ———: Silence of Statute. Where the statute gives a certain board power of removal of certain public officers appointed by the board for a fixed term, for causes therein enumerated, but is silent as to the duty of the board to assign charges and to give the officers a hearing before removing them, it cannot remove them without first assigning charges and giving them the right to be heard.

6. ———: ———: ———: Lack of Time. The right of a public officer to be heard in an investigation upon charges affecting his title to the office, with its emoluments and privileges, is not to be denied on the ground of a lack of time to present charges and hear the officer in answer thereto. The fact that the successful operation of the law, under certain circumstances, may be retarded, furnishes no sufficient reason for ignoring fundamental principles of right and justice, which every citizen has the right to invoke in the preservation of his person, good name and estate.

## Prohibition.

RULE MADE ABSOLUTE.

*Jones, Jones & Hocker* and *H. M. Walsh* for relators.

*A. C. Maroney, T. K. Skinker* and *B. Schnurmacher* for respondents.

FOX, J.—The origin and nature of this proceeding may be thus stated:

On the 20th of March, 1905, relators filed in this court their petition praying for the issuance of a writ of prohibition directed to respondents, prohibiting them from removing relators from certain official positions which it is alleged they are holding under the laws of this State, without a hearing, upon charges duly presented and without notice of any investigation

of charges so presented. A preliminary rule was issued upon the petition filed, and on March 23d, 1905, respondents filed their return to said rule, and on the same day relators duly filed their motion for judgment upon the pleadings as filed.

The petition (omitting certain formal allegations) states:

"The petitioners state that Andrew C. Maroney, Thomas K. Skinker and Benjamin Schnurmacher do now and did at the times hereinafter stated compose the Board of Election Commissioners for the city of St. Louis. That heretofore, to-wit, on the 10th day of October, 1904, and ninety days prior to the next State election in said city and State, petitioners were, under the provisions of section 7 of the act of General Assembly, approved March 24th, 1903, each severally appointed judges and clerks of election for the precincts in which the petitioners respectively reside. That each of the petitioners were appointed for a term of two years; that they were each qualified voters in the respective precincts for which they were appointed as above alleged; that they were and are each citizens of the United States, men of good repute and character; able to read and write the English language, of good understanding and capable; that they each of them had resided in the precinct for which they were so appointed for more than thirty days before their appointment, and they and each of them were entitled to vote therein at the next election. That they and each of them held no office or employment under the United States or under the State of Missouri, or under the city of St. Louis, and none of them; that no objection to the qualifications of any of the petitioners was ever made to the respondents within the time prescribed by section 8 of said act and the time for making such objections as prescribed by said section has long since expired. That after their several appointments each of the petitioners took and subscribed to the oath

prescribed by law and filed the same in the office of the election commissioners, and entered upon and have since performed their duties as judges and clerks of election in said city; that by virtue of the provisions of said act of the General Assembly the petitioners are empowered and required to serve as judges and clerks of election at all elections in said city.

"That petitioners and each of them are and were at the time of their said appointments either members of the Democratic or Republican parties, being equally divided between said parties and were appointed by respondents under the provisions of said law which requires that two of the four judges in each precinct shall belong to and be members of the political party which at the time of the last general State election for State officers polled the highest number of votes for Governor and two of such judges shall belong to and be members of the political party which at the last general State election polled the next highest number of votes for Governor, the Democratic and Republican party having at the last State election next to the appointment of petitioners, polled respectively the highest number of votes for Governor; that the clerks of election as aforesaid were appointed by respondents under the provisions of said law, which requires that one of the two clerks in each precinct shall belong to and be members of the political party which at the last general State election for State officers polled the highest number of votes for Governor and one of said clerks shall belong to and be a member of the political party which at the last State election polled the next highest number of votes for Governor, the Democratic and Republican parties having at the last State election next before the appointment of said petitioners polled the highest and next highest number of votes for Governor respectively.

"That by the provisions of section 18 of said act of the General Assembly it is made the duty of judges

of election to supervise the precinct registration in said city and to meet with the election commissioners, who together with all of the judges and clerks of election in said city constitute under said law the board of registry, and from time to time as prescribed by said law revise the registration of said city, and it is likewise the duty of the judges of election to be present at the precinct polling places at each election held in said city and administer the oaths required by law to be administered to the officers of election, take charge of the ballot boxes and keys thereto, supervise the election and see that all qualified voters are permitted to cast their votes, to receive the ballots, make the endorsements thereon required by law and record the vote in the registration books, as provided by the said act of the General Assembly, and at the close of the election canvass the vote and make return thereof to the board of election commissioners. That each judge and clerk of election is by law exempt from jury duty during the term of his office and until two years after his term shall expire if he shall perform his duty as such judge at each election during his term of office. That by section 48 of said law each judge and clerk of election is entitled to have and receive as compensation for his services the sum of four dollars per day, to be paid by the city of St. Louis, which by said law is required to make the necessary appropriation therefor.

"Petitioners further state that ever since their appointment as aforesaid they have performed each and every of the duties required of them by law, and are now discharging the duties of their said office. That the next election in the city of St. Louis will be held on the 4th day of April, 1905, and these petitioners by virtue of their said office as judges and clerks of election will be judges and clerks of said election. That petitioners have been guilty of no misconduct,

justifying their removal from the position of judges and clerks of election as aforesaid.

"Petitioners show to the court that the only provision of law concerning the removal of judges or clerks of election is the following provision of section 7 of said act of the General Assembly, to-wit:

" 'If any person holding the position of judge or clerk of election is found not to possess all qualifications prescribed in this section, or if any such judge or clerk shall be guilty of neglecting the duties of the place, or be guilty of any official misconduct, then such person shall be removed from office by the commissioners, and any such vacancy shall be immediately filled by the appointment of a person having the same qualifications as the person whose place he fills, as hereby required, who shall be selected and appointed as this section provides.'

"The petitioners show to the court that they each severally possess all of the qualifications prescribed by said law; that they have been guilty of no neglect of the duties of their place as judges and clerks of election and that they have been guilty of no official misconduct.

"Petitioners show to the court that the respondents have informed the petitioners and each of them that they were considering the advisability of removing petitioners, and each of them, from their offices respectively as judges and clerks, without giving said petitioners, or any of them, any legal notice of charges, if any, made against them, or that the respondents claimed, or had information that the petitioners, or any of them, did not possess all the qualifications prescribed in said law, or that any of them have been guilty of neglecting the duties of the offices aforesaid, or have been guilty of any official misconduct, and said respondents purpose and intend to and will, unless prohibited by this court, remove and oust the petitioners, and each of them, from their several posi-

tions as judges and clerks of election in said city and
for the precincts hereinbefore recited.   That thereby
respondents purpose and intend to and unless prohib-
ited will  deprive the petitioners of the privilege and
opportunity of participating as judges  and  clerks of
election in the election to be held in  the  city  of  St.
Louis on April 4, 1905, and thereby deprive the peti-
tioners of the privileges and immunities to which they
are entitled under said law upon the faithful perform-
ance of the duties of their offices, and particularly to
deprive the petitioners of the exemption and immunity
from jury service provided by said law, as well as to
deprive the petitioners of the compensation to which
they are entitled, all of which the respondents purpose
and intend to and will do without authority of law,
and in the absence of any notice  or  privilege to  be
heard and without giving the petitioners an opportu-
nity to be heard in their defense.

"Petitioners further show to the court  that  the
respondents are about to designate  and  select  other
and different persons to act as judges and clerks of
election in lieu and stead of petitioners and are about
to issue to such other persons  certificate of appoint-
ment, empowering such other persons to perform the
duties imposed by law upon the petitioners.

"Petitioners show to the court that the respond-
ents in proceeding to act in the removal of the peti-
tioners as  hereinbefore alleged without notice to the
petitioners, or any opportunity to be heard, are acting
without authority of law; that the proceedings of the
respondents  about  to  be had are altogether outside
of the course of common law and likewise outside of
any statutory or judicial proceedings and that no writ
of error lies to such proceedings from  this  or  any
other court and no appeal is provided  by law  or  al-
lowed to this or any other court.

"Petitioners further show to the court  that  the
law hereinbefore referred to contemplates judicial ac-

tion on the part of said respondents in the removal of judges and clerks, but that the said respondents do not propose to take any judicial action thereon, but intend to and purpose capriciously and arbitrarily to remove all the petitioners herein without notice or specification of charges against them and without an opportunity to be heard in their defense.

"Wherefore, inasmuch as the petitioners are remediless in the premises by or through the ordinary processes or proceedings at law, the petitioners pray that a writ of prohibition issue out of and under the seal of this Honorable Court, prohibiting and restraining the said respondents from removing the petitioners, or any of them, or taking any steps looking to the removal of said petitioners, or any of them, without first giving to said petitioners and each of them due and legal notice of the proceedings intended to be taken by said respondents, in respect to the removal of petitioners, or any of them, and without first giving to said petitioners, and each of them, a full opportunity to be heard in their defense, concerning any charges which may be made authorizing or justifying their removal under the law aforesaid, and until such proceedings shall be had by said respondents upon notice and a hearing had in accordance with law, that said respondents be restrained and prohibited from failing or refusing to recognize the petitioners, and each of them, as the duly qualified and existing judges and clerks of election, or from otherwise interfering with the proper discharge of their duties as such, and for further and additional processes, orders and remedies as to the court shall seem meet and proper."

The petition was duly verified. The return of respondents to the preliminary rule issued in pursuance of the allegations and relief sought in the petition, admits that respondents constitute the Board of Election Commissioners in and for the city of St. Louis in the State of Missouri. The return then proceeds to

enumerate the petitioners who were in fact appointed and commissioned judges and clerks of election within and for the election precincts averred in the petition. It is then admitted by respondents that the appointment of petitioners referred to as actually having been made, was made under and in pursuance of the terms and provisions of section 7 of an act of the General Assembly of the State of Missouri, approved March 24, 1903, providing for the registration of voters and for elections in cities of this State having a population of three hundred thousand inhabitants or more; that those of the petitioners who were actually appointed and commissioned had and possessed at said time all of the necessary qualifications required of them by law, and were at said time members of the Democratic or Republican party respectively, as in the petition is averred; and said petitioners, so appointed, were appointed by said board under the provision of said law requiring that two of the judges and one of the clerks in each precinct of the city should belong to and be members of the political party which at the last general State election for State officers polled the highest number of votes for Governor, and that two of said judges and one of the clerks should belong to and be members of the political party which at said election polled the next highest number of votes for Governor; and that the Democratic party, at the last State election prior to the appointment of said petitioners, had polled the highest number of votes for the said office of Governor. That after having been so appointed such of said petitioners as were appointed, as herein stated, duly qualified as required by law and thereupon there was issued, to each of said petitioners so appointed and qualified the certificate or commission prescribed and provided for by said law.

The return then states: "And respondents state that information having come to them that certain of the petitioners had been guilty of neglecting the duties

of the place to which they were appointed as aforesaid, and that certain of said petitioners did not possess the qualifications prescribed by law, and above referred to, and that certain of the petitioners had been guilty of official misconduct; that respondents determined to investigate the question of such lack of qualification, neglect of duty or official misconduct of various of said petitioners, and thereupon notified said petitioners of their said purpose by letter, properly directed and duly mailed to said petitioners, postage paid, on or about the fifteenth day of March, 1905; said letter and notice to each of said petitioners being substantially in words and figures as follows, to-wit:

"'March, 15th, 1905.

"'Dear Sir:

"'You are hereby informed that the Board is considering the advisability of removing you as an election official, and the matter will be acted upon on Friday, March 17th, 1905, at nine o'clock a. m., at which time you may be present if you so desire.

"'BOARD OF ELECTION COMMISSIONERS,

"'JOHN ELLISPERMAN, JR., Secretary.'"

"To which letter and notice was affixed the seal of said Board of Election Commissioners."

It is further stated in the return that "prior to the issuing of the preliminary rule herein, these respondents removed petitioners Peter Gill, James Moynihan and Thomas E. Garvey, and revoked their commissions, because these respondents ascertained and found that said petitioner Gill was not a man of good repute and character, and because they found that petitioner James Moynihan had been guilty of neglecting the duties of his place, and because they found that petitioner Thomas E. Garvey was not a registered voter of the precinct for which he had been appointed and served, and, therefore, did not possess the qualifications prescribed by law. That such action

was taken by respondents as such Board of Election Commissioners and pursuant to a vote duly taken and had, and was not taken arbitrarily and capriciously, but because respondents, as such Board, ascertained and found the foregoing facts to exist and to be true.

"Respondents further state that they are invested with the power of removal exercised as aforesaid under the provisions of section seven, upon finding that any judge or clerk of election does not possess all the qualifications prescribed, or upon finding that any such judge or clerk shall be guilty of neglecting the duties of his place, or upon finding that any such judge or clerk was guilty of any official misconduct; and these respondents acted upon the power so conferred upon them, and because, from their investigation, they ascertained and found the facts to warrant them in the exercise of such power.

"Respondents further state that immediately upon learning of the institution of this proceeding, and the granting of the preliminary rule or order herein, they suspended all further investigations with reference to any of the other petitioners who are commissioned and qualified judges and clerks; but these respondents admit that it was and is their purpose, if not prohibited by the judgment and order of this court, to investigate the qualifications of all judges and clerks of election, and to investigate whether or not said judges and clerks have neglected their respective duties, and to investigate the question of whether any of said judges or clerks have been guilty of official misconduct and to remove all judges and clerks found not to possess the necessary qualifications, or found to have been guilty of neglect of duty, or of official misconduct.

"But these respondents say that it was not and is not their purpose to make any investigation concerning these petitioners who have never been commissioned as either judges or clerks of election.

"Wherefore, having made full return, these respondents pray that the preliminary rule heretofore issued herein may be quashed, that the petition be dismissed, and that these respondents go hence discharged with their costs."

This cause was submitted to the court upon the petition, return and motion for judgment upon the pleadings, and the conclusion was reached and announced by the court, that the motion for judgment should be sustained, and the preliminary rule, by an order entered of record, was made absolute as to the relators mentioned in the return, as having been actually appointed judges and clerks of election in the precincts alleged in the petition.

There is nothing remaining for this court to do in respect to this cause, except to briefly indicate the basis of its legal conclusions upon the record presented.

OPINION.

It is apparent from this record that only one legal proposition is presented to this court for its consideration; that is, under section seven of the act of the General Assembly creating the Board of Election Commissioners for the city of St. Louis in the State of Missouri, approved March 28, 1903 (Laws 1903, p. 170), is such board vested with the power to remove the relators from the positions of judges and clerks of their election precincts without notice of any charges against them and without a reasonable opportunity to be heard upon the causes assigned for their removal?

Section 2 of the act referred to in respect to elections in cities of three hundred thousand or over, creates the Board of Election Commissioners for the city of St. Louis, and it is admitted that the respondents are members of and constitute said board. The authority exercised by the Board of Election Commissioners, as created by this act, in appointing the rela-

tors as judges and clerks of election in the election precincts alleged in the petition, as well as the power of removal of such judges and clerks vested in such board, are embraced in section seven of the act of the General Assembly herein cited. This section provides:

"Such Board of Election Commissioners shall, ninety days prior to the first city or state election after this act becomes a law, and each two years thereafter, select and choose four qualified voters as judges of election for each precinct in such city; they must be citizens of the United States; must be men of good repute and character; able to read and write the English language, be of good understanding and capable; they must have resided in the precinct for which they are selected to act not less than thirty days before their appointment, and be entitled to vote therein at the next election, and not hold any office or employment under the United States, the State of Missouri, or the city in which such election is held, and not be candidates for any office at the next ensuing election; two clerks of election for each precinct shall also be selected within the same time, and their successors each two years thereafter, by such commissioners, who shall possess the same qualifications as the judges aforesaid. Before entering upon the duties of their offices, each judge and clerk so appointed shall take and subscribe to a like oath as that taken and subscribed by the election commissioners and file the same in the office of the election commissioners. Said judges and clerks shall be appointed for a term ending ninety days prior to the next state election after the election at which they were appointed to serve, and shall during said term, serve as judges and clerks at all special, local or municipal elections in such cities; where a vacancy in the office of judge or clerk shall occur from any cause, said commissioners shall make an appointment as herein provided to fill such vacancy. Two of said judges and one of said clerks of election shall belong to and be mem-

bers of the political party which at the last general state election for state officers polled the highest number of votes for Governor, and two of said judges and one of said clerks of election shall belong to and be members of the political party which at said last state election polled the next highest number of votes for Governor; and the names of two of said judges and one of said clerks shall be designated by the election commissioner, or commissioners, belonging to and a member or members of the same political party as such judges and clerks, subject to ratification by the Board of Election Commissioners; but said Board of Election Commissioners shall accord to each of the aforesaid political parties equal representation in the appointment of judges and clerks. If any person holding the position of judge or clerk of election is found not to posses all qualifications prescribed in this section, or if any judge or clerk shall be guilty of neglecting the duties of the place, or be guilty of any official misconduct, then such person shall be removed from office by the commissioners, and any such vacancy shall be immediately filled by the appointment of a person having the same qualifications as the person whose place he fills, as hereby required, who shall be selected and appointed as this section provides.''

The legal proposition with which this court is confronted is sharply presented in the petition of relators and return by the respondents. Restating the proposition more clearly, it is contended by the relators that the provisions of section 7 applicable to the removal of judges and clerks of election confer no power upon the Board of Election Commissioners to remove judges and clerks of election except upon charges against them and due notice with a reasonable opportunity to be heard upon the charges made against them. On the other hand the respondents insist that the provisions of section 7 vest them with full power to make an investigation of the causes for removal of judges and

clerks of election, enumerated in the statute, without the presentment of any charges or any notice of the same to the judges or clerks who may be under investigation, and if upon such investigation they find the existence of any of the causes mentioned in the provisions of the statute authorizing their removal, then they are authorized to act and order the removal of such judges and clerks.

It is insisted by respondents that the positions occupied by the judges and clerks of election, under the act providing for elections in the city of St. Louis, are not *offices* within the well-understood meaning of the term "office" and hence the familiar rules of law repeatedly announced by this court in respect to the removal of public officers have no application to the proposition presented by this record. This insistence leads us to first inquire as to the nature of the positions of judges and clerks of elections in their respective precincts in the city of St. Louis. A public office is defined by some of the text-writers upon the subject of "Public Offices and Officers" as "the right, authority and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. The individual so invested is a public officer." [Mechem's Public Offices and Officers, sec. 1, pp. 1 and 2.] Mr. Justice SWAYNE, in United States v. Hartwell, 6 Wall. (U. S.) 385, 393, thus defines the term: "An office is a public station, or employment, conferred by the appointment of government. The term embraces the ideas of tenure, duration, emolument and duties." In 23 Am. and Eng. Ency. of Law (2 Ed.), 322, a public office is thus defined: "In the most general and comprehensive sense, a public office is an agency for the State, and a person whose duty it is to

191 Sup—35

perform this agency is a public officer. Stated more definitely, a public office is a charge or trust conferred by public authority for a public purpose, the duties of which involve in their performance the exercise of some portion of the sovereign power, whether great or small. A public officer is an individual who has been appointed or elected in the manner prescribed by law, who has a designation or title given to him by law, and who exercises the functions concerning the public as- signed to him by law."

It is a part of the functions of State government to provide elections for public officers, and to furnish suitable officers for putting in operation such provi- sions. We have in this cause the relators who have been duly appointed judges and clerks of election in their respective precincts, occupying positions created and conferred by law. Their right and authority to perform the duties incumbent upon them emanates from the legislative branch of the State government. The duration of their terms definitely fixed; their du- ties plainly marked out, which are of great public im- portance and clearly for the benefit of the public. The emoluments of the offices held by them, as well as cer- tain privilges and immunities, such as exemption from jury service, are fully provided for; hence it is ap- parent that in the positions occupied by relators, there are embraced "the ideas of tenure, duration, emolu- ment and duties," which are essential requisites in or- der to constitute the position of judges and clerks of election "an office," within the well-understood mean- ing of that term.

The act of the General Assembly providing for the appointment and removal of judges and clerks of elections in the city of St. Louis fully recognizes the position of a judge or clerk of election as an *office*. It provides that when the commissioners shall find the existence of any of the causes enumerated in the stat- ute, such judge or clerk shall be removed *from office*

by the commissioners, and every such vacancy shall be immediately filled. Measured by the definition of public office, as herein indicated, and accepting the legislative construction of the position of judges and clerks of election, the conclusion is inevitable that the positions occupied by relators as judges and clerks of election in their respective precincts in the city of St. Louis, in pursuance of the election laws applicable to such city, are public offices and that relators are public officers.

Having reached the conclusion that relators are officers discharging duties for the benefit of the public for a fixed period, we are next confronted with the question as to the power of the Board of Election Commissioners of the city of St. Louis to remove them for the causes enumerated in the statute without any presentation of charges or notice thereof and without an opportunity of being heard in the premises.

The principle involved in this record has frequently had the attention of the appellate courts of this State and the question propounded as to the powers of removal with which the Board of Election Commissioners are vested cannot be more satisfactorily answered than by the repeated announcements of these courts in treating the proposition presented. The terms of the statute conferring upon the election commissioners the power of removal, provide: "If any person holding the position of judge or clerk of election is found not to possess all qualifications prescribed in this section, or if any judge or clerk shall be guilty of neglecting the duties of the place, or be guilty of any official misconduct, then such person shall be removed from office by the commissioners."

It is clear that the provisions of the statute authorizing the exercise of the power of removal by the Board of Election Commissioners, does not expressly provide the nature of the procedure in respect to the exercise of such power. There is no provision requir-

ing charges to be presented or notice of such charges before a hearing is had upon them. It is equally clear that the removal of relators from their offices as judges and clerks of election must be based upon some of the causes enumerated in the statute; in other words, their removal must be *for cause*. At the very inception of the consideration of this question we must approach the discussion of it with a full recognition of that elementary and fundamental principle "that no one can be passed upon either in his person or estate without being first given an opportunity to be heard." As applicable to the proposition before us the St. Louis Court of Appeals in State ex rel. v. Police Commissioners, 14 Mo. App. 1. c. 302, very clearly indicates the force and effect of a provision fixing definitely the term of office and tersely announces the rules of law applicable to removals where the term was thus fixed. It was there said: "It is not disputed that the power of removal at pleasure is incidential to the power of appointing, in the absence of any inconsistent limitation in the law which creates the authority to appoint. If the law provides a term for the incumbency, this will supersede the incidental power of removal during the continuance of the term. If, notwithstanding the term, provision is made for a removal upon certain conditions, or for certain reasons, there can be no valid removal pending the term unless such conditions or reasons appear, either presumptively or otherwise." Further emphasizing the correctness of this principle and approving it, as announced in the 14th Mo. App., the Court of Appeals, in State ex rel. v. Brown, 57 Mo. App. 1. c. 204, thus states its views upon this question: "The general rule is, that an election or an appointment to office for a definite term carries with it the right to serve the full period, unless sooner forfeited by misbehavior. Upon this principle it has been held that the incumbent of a definite term was not removable, except for cause, where the removal was not *expressly* declared

to be exercisable at pleasure.   [Hallgren v. Campbell,
82 Mich. 255.]   It is fixity of tenure that destroys the
power of removal at pleasure otherwise incident to the
appointing power.   [State ex rel. v. Police Commis-
sioners, 14 Mo. App. 302.]   The reason of this rule is
the evident repugnance between the fixed term and the
power of arbitrary removal.   The effect of this rule is,
that the right to hold during a fixed term can only be
overcome by an express grant of power to remove at
pleasure.   An inferential   authority   to remove at
pleasure can not be deduced, since the  existence of a
defined term, *ipso facto*, negatives such an inference,
and implies a contrary presumption, i. e., that the in-
cumbent shall hold to the end of his term, subject to
removal for cause.''

No charges were presented to the Board of Election
Commissioners, and it is conceded if notice was re-
quired in the procedure of removal under the statute,
that the letters addressed to relators, indicated in the
statement of this proceeding, was insufficient.   That
the terms of the statute conferring power upon the
Board of Election Commissioners to remove judges and
clerks of election in the respective election precincts in
the city of St. Louis only authorize their removal for
cause, is too plain for discussion. It is true the causes
authorizing removal are enumerated in the statute, but
this renders them no less causes for removal and by no
means lessens the necessity of presentation of charges,
embracing some of the causes mentioned, and notice of
the hearing upon such charges.   The law upon the sub-
ject of the power of removal and notice of procedure in
the exercise of such power, is well stated in the text of
volume 23, Am. and Eng. Ency. of Law (2 Ed.), 437,
438.   The rule is thus stated:  ''When the office is to
be held during good behavior, or for a period fixed by
the constitution or by statute, and in the absence of
any provision authorizing a summary removal, such
removal may be made only for cause.   In either of

such cases the person proposed to be removed is entitled to notice of the charges intended to be preferred against him, and to a reasonable opportunity to make defense. The mere silence of the statute with respect to notice and hearing will not justify the removal of the officer whose term or tenure is declared by law, without knowledge of the charges and an opportunity to explain and defend. The cases are not in accord as to whether or not the grant of a general power to remove officers appointed for a definite time carries with it the right to remove at any time or in any manner deemed best, but the prevailing rule is that if the power is conferred to remove for cause, either general or specific, a judicial investigation on specified charges and notice is requisite; but when the tenure is at pleasure, charges, notice and hearing are unnecessary.''

In Mechem's Public Offices and Officers, sec. 454, it is said: ''In those cases in which the office is held at the pleasure of the appointing power, and where the power of removal is exercisable at its mere discretion, it is well settled that the officer may be removed without notice or hearing. But on the other hand, where the appointment or election is made for a definite term or during good behavior, and the removal is to be for cause, it is now clearly established by the great weight of authority that the power of removal cannot, except by clear statutory authority, be exercised without notice and hearing, but that the existence of the cause, for which the power is to be exercised, must first be determined after notice has been given to the officer of the charges made against him, and he has been given an opportunity to be heard in his defense.''

The principle involved in the record presented in this cause, as before stated, has frequently had the attention of this court, and it has uniformly and in no uncertain or doubtful terms indicated its views upon the proposition.

In State ex rel. Denison v. St. Louis, 90 Mo. 19, this court had in judgment the validity of a resolution of the Council of the Municipal Assembly of the city of St. Louis. In the course of the opinion Black, J., discussing the legal propositions presented, announced this rule which is strikingly applicable to the question presented by the record in the case at bar. He said: "Where an officer is appointed during pleasure, or where the power of removal is discretionary, the power to remove may be exercised without notice or hearing. [Field v. Commonwealth, 32 Pa. St. 478; Ex parte Hennen, 13 Peters 230.] But where the appointment is during good behavior, or where the removal must be for cause, the power of removal can only be exercised when charges are made against the accused, and after notice, with a reasonable opportunity to be heard before the officer or body having power to remove. [Gaskin's case, 8 Term Rep. 209; Field v. Commonwealth, supra; Dillon on Mun. Corp. (3 Ed.), secs. 250 to 254.]" After quoting certain provisions of the charter of the city of St. Louis the learned and esteemed judge proceeding to discuss their application to the proposition in judgment, further said: "Thus it will be seen that in case of the suspension of an elected officer, and in case of the removal of an elected officer the charter is specific in allowing him time and opportunity to be heard, and in case of suspension he must have a copy of the charges; but in case of the removal of an appointed officer no such specific provisions are made. It does not follow from all this, as is contended by the defendants, that the appointed officer is entitled to no notice. More prominence is given in these charter provisions to the removal of an elected officer than to the removal of an appointed one, and, as to the former, the charter goes more into the details of the proceedings; but the charter does not say, nor is it fairly deducible therefrom, that an appointed officer may be removed without notice. When the removal is not discretion-

ary, but must be for a cause, as is the case here, and nothing is said as to the procedure, a specification of the charges, notice, and an opportunity to be heard, are essential. This, we think, is the result of the authorities before cited. The proceedings in this case are wanting in all these requisites; for if, indeed, any charges were ever made against the relator at all, they were the product of the minds of the members of this committee, and by them kept from the knowledge of the accused.''

In State ex rel. v. Walbridge, 119 Mo. 383, the powers vested in the mayor of the city of St. Louis to remove a certain officer, holding his office by appointment, were involved. In this case due notice of the charges for removal was given; however, in the discussion of the nature of the procedure in the exercise of the power of removal, vested in the mayor, the law applicable to the necessity of notice and ' reasonable opportunity to be heard in cases where it is sought to exercise such power, the views of this court were thus clearly and forcibly expressed: ''In the case presented, the power to remove the officer is 'for cause,' and no notice is mentioned as requisite to be given to the officer to be proceeded against. But the law in accordance with the principles of justice, principles which are fundamental and eternal, will require that notice be given before any person be passed upon, either in person, estate or any other matter or thing to which he is entitled. And though the statutes do not in terms require notice, the law will imply that notice was intended. [Laughlin v. Fairbanks, 8 Mo. 370; Wickham v. Page, 49 Mo. 526; Brown v. Weatherby, 71 Mo. 152.] And what the law will imply, is as much part and parcel of a legislative enactment, as though set forth in terms. [State ex rel. v. Board, 108 Mo. 235; Sutherland on Stat. Construc., sec. 334, and cases cited.]''

We see no reason why the rules announced in the foregoing causes are not equally applicable to the pro-

positions presented by the record in hand. The judges and clerks of election in the election precincts in the city of St. Louis fall within the proper definition of a public officer. Their duties are much more closely related to the general public of the State than the officers of the city of St. Louis concerning whom the principles heretofore announced by this court have reference. In the one, the performance of the duties by city officials is primarily for the benefit of a certain locality; however, treating the State as an entire commonwealth, such benefits extend to the general public. In the other, the performance, at least, of a part of the duties by judges and clerks of election in the city of St. Louis has special reference to benefits for the general public.

Applying the principles so clearly announced by the authorities herein cited, there can be but one conclusion upon the proposition submitted for our consideration in this proceeding—that is, that the relators had been duly appointed judges and clerks of election in their respective election precincts in the city of St. Louis, and under the law regulating elections in such city, were officers, provided for by the General Assembly to the end of putting in operation the provisions of the law applicable to such elections; and that the power vested in the Board of Election Commissioners to remove relators as provided by section 7 of the act of the General Assembly, heretofore mentioned, can only be exercised after due presentation of charges embracing causes for removal and notice of the same, with a reasonable opportunity to be heard upon such charges, before said board of commissioners.

The law authorizing the appointment of judges and clerks of election in the city of St. Louis very properly recognizes the essential qualifications of those who are to be selected for such appointments by providing that they must be citizens of good repute and character. Presumably those persons who are appointed by

the Board of Election Commissioners to perform the important duties of judges and clerks of election in a large and populous city are of good repute and high character, and we are unwilling, under the terms of the statute as now in force, to sanction the removal of such officers without affording them an opportunity of being heard upon the charge embracing the causes assigned for their removal. It may be said that want of time to hear complaints of that character against the officers would tend to render inoperative the provisions of section 7 of this act conferring upon the board the power of removal—on the other hand, it is said that the power of removal without notice and opportunity to be heard, is vesting the exercise of an unauthorized power attended with great danger to the personal rights of the citizen.

In this proceeding we are dealing with a grave and most important legal principle, *the right to be heard in an investigation upon charges not only affecting good citizenship, but as well the title to official position, with its emoluments and privileges,* and the fact that the successful operation of a law, under certain circumstances, may be somewhat retarded, furnishes no sufficient reason for ignoring fundamental principles of right and justice, which the citizen has the right to invoke in the preservation of his person, and good name or estate.

Respondents insist in their return that unless they are prohibited they will continue their investigation of the conduct of relators, and if in their judgment any of the causes enumerated in the statute are found to exist, they will be removed, all of which they propose to do, concededly without notice and an opportunity afforded relators to be heard. The respondents composing the Board of Election Commissioners of the city of St. Louis doubtless are gentlemen of high character and standing, and no one questions that their only purpose is to enforce the law as they interpret it, to

the end that the elections provided for by law may be under the supervision of fair, competent and honest officials; however, we are unable to agree with their course of procedure and as the law now stands we are unwilling to give our assent to the removal of a public officer, presumably of good repute, without affording him an opportunity of being heard upon the causes of such removal.

The conclusion announced making the preliminary rule of prohibition against the respondents absolute was proper.

*Marshall, Gantt* and *Lamm, JJ.,* concur; *Burgess* and *Valliant, JJ.,* dissent; *Brace, C. J.,* not sitting.