JAMES E. ENGLISH *vs.* ALVIN C. SMITH ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued December 8th, 1937—decided January 5th, 1938.

574

*Ephraim Edward Sinn,* for the appellant (plaintiff).

*Omar W. Platt,* for the appellees (defendants).

HINMAN, J.   The plaintiff as a taxpayer of the town of Milford brought this action against the named defendant and four others constituting the board of sewer commissioners of that town.   He alleged in his substituted complaint that the defendants were duly appointed to that board, qualified and are acting as such "in pursuance of the Special Act of 1931 entitled 'An Act creating a Board of Sewer Commissioners in the Town of Milford' and of Sections 128c through 150c of the Cum. Sup. [General Statutes] 1935;" that the board, "complying with Sec. 7 of said Special Act . . . filed in the office of the town clerk . . . a map showing the location of the sewer district wherein said board proposed to construct a sewerage system; that the board caused an estimate to be made of the cost of such construction, amounting to $462,450, of which the United States government agreed to pay and has paid $207,450; and that the board authorized the issuance of bonds amounting to $255,000 to pay the balance of the cost of construction.   By amendment there was annexed to the complaint a specimen copy of these bonds, from which it appears that they are bonds of the town of Milford, executed by its selectmen, and stated to be issued under §§ 466-472 of the General Statutes.   The amendment also alleged that "these bonds, under Sec. 138c of the Cum. Sup. of 1935, are

payable only from funds derived from the net revenue of the sewerage system."

The foregoing allegations are common to both counts of the complaint, the first of which alleges, further, that the town treasurer paid from the general funds of the town stated sums in payment of interest on the bonds, and to retire those which matured on December 1st, 1936; also that payments totaling $466.05 were made upon order of the board of selectmen, for legal services and other expenses of the issuance of the bonds, the obligation to pay which, it is alleged, "rests upon [the] abutting property owners, either through assessments or service charges or both" and not upon the town "except from funds derived from the net revenue of said sewerage system." The second count alleges that "the board of sewer commissioners was given the sum of $20,000 out of the general funds of said town to build lateral connections with the sewerage system." As to the payments stated therein, both counts allege that they were made "under a mistake, without authority of law, to the injury of the plaintiff and the other taxpayers of said town, and to the unjust enrichment of the abutting property owners in said sewer district." The prayers for relief are for (1) damages to the amount of the payments alleged; (2) a decree directing the board of sewer commissioners to return that amount, with interest, to the treasury of the town.

Of the several grounds of demurrer to the first count the one sustained was in substance that it was not alleged that either the board or its members ever received any of the money mentioned in that count or has any of it in possession. We follow the parties in their interpretation of this ground, evinced by their briefs and arguments, as sufficiently broad to test the validity of the theory of the plaintiff's proceeding as

disclosed by his complaint. This appears to be that the obligation for the payments complained of rests upon the property owners benefited by the construction of the sewers, that the town, in making the payments, discharged the duty of these owners, and that the latter, through the commissioners, are required to make restitution therefor. The principle apparently relied on is that one who, by payment to a third person, has discharged the duty of another under a mistaken belief that he was thereby discharging a duty of his own, is entitled to restitution from the one who owed the duty, unless the other disclaims the transaction. Restatement, Restitution, § 43 (1), p. 172. In this State remedy under the doctrine of unjust enrichment is available whether payment was made under mistake of fact or of law. *Gilpatric* v. *Hartford,* 98 Conn. 471, 480, 120 Atl. 317.

It appears inferentially from the complaint and definitely from the plaintiff's brief and argument that the conception upon which claim is made that the defendants are liable is that the territory in which the sewers here involved are located constitutes a "sewer district" in the nature of a municipal or quasi-municipal corporation and that the defendants are the commissioners of such municipality and the "governmental agency or instrumentality" of the property owners therein. It is upon this theory of representation, by the commissioners, of the owners of property abutting on or otherwise benefited by the sewers and who are claimed to have been unjustly enriched by the payments alleged to have been made, that the commissioners are sought to be held primarily liable for restitution to the town.

This basic conception is erroneous. It appears from the complaint that the defendants were duly appointed under the special act of 1931 (21 Special Laws,

p. 289) "creating a Board of Sewer Commissioners in the Town of Milford," and are acting thereunder; Chapter 33a of the Cumulative Supplement (General Statutes) 1935, to which the complaint also refers, contains no provision which would change their powers and duties from those prescribed under the special act unless they became the commission of a sewer district "organized for municipal purposes." General Statutes, Cum. Sup. 1935, § 128c. Section 7 of the special act provides that before constructing any sewer the commission shall cause a map, drawing or written description, showing the location and layout thereof, the adjoining land and the owners thereof, to be made and a copy filed in the town clerk's office. This obviously was not intended and is insufficient to constitute the location so designated a sewer district in the sense of a municipal entity or subdivision, and the allegation in the complaint that, "complying with Sec. 7," the board filed such a map does not import the creation of a "sewer district" even though the complaint refers to it as such. The complaint, properly construed, shows that the commission was, and remained, both under the special act and the public act, Chapter 33a of the Cumulative Supplement of 1935, an official board, instrumentality and agency of the town of Milford, and not of a "sewer district" in the sense of a distinct municipality. Therefore any municipal expenditures for or on account of the construction of the sewers here involved were and are payable by the town of Milford, there being no separate municipality charged with the duty, as in the case of the Woodmont Association (14 Special Laws, p. 449 et seq.) to which the plaintiff specially refers.

The special act (21 Special Laws, p. 293) provides, in § 13, that in case any assessment made on account of any disposal plant or sewer is not sufficient to cover

the entire cost of it, with interest and incidental expenses, a supplemental assessment may be made, not to exceed, together with the original assessment, the benefits conferred, to the end that a sum sufficient to pay the cost of the plant or sewer may be obtained. However, even if, as the plaintiff claims, the act contemplates that the total expense of and on account of the construction of the sewers is to be ultimately met from the proceeds of assessments or other charges upon owners of property benefited thereby, it is necessarily to be implied, especially in the absence of any provision to the contrary, that at least some expenditures shall be made, in the first instance, by the town from funds other than those derived from the proceeds of assessments of benefits or service charges, and without the necessity of waiting, before commencing construction or incurring any expense, until funds are available from collection of such assessments. In § 18 of the special act it is provided that upon the completion of appraisal and payment of damages awarded to those persons whose land or interest in land is taken, the commission may proceed with the construction, and in § 9 that such portion of the total expense incurred "as is not immediately assessed against the persons . . . specially benefited, shall, in the first instance, be paid by the town of Milford, from the proceeds of bonds or notes issued therefor;" also that moneys thereafter received by the town on account of the sewers, as special benefits or otherwise, in excess of the actual cost of subsequent extensions, shall constitute a sinking fund for the retirement of any such bonds.

The public act (Cum. Sup. 1935, § 131c) provides that "any power granted by this chapter [33a] shall be in addition to, and not in derogation of, any power existing. . . . in any of the towns . . . under any statutory or charter provisions." Moreover, we find

nothing in that chapter which is inconsistent with the Milford special act in the respects just referred to, or indicating any intent that in the case of plants constructed under and in pursuance of it, instead of under or in combination with a special law, incurrence of any expense for or on account thereof must await the collection of assessments of benefits and may be paid primarily only from the proceeds thereof. Not only are the inferences from the necessities of the situation to the contrary but significance is afforded by provisions in the chapter such as for deferred due dates for assessments (§ 135c), and that an appeal from any assessment shall stay further proceedings for the collection of the assessment "but shall not stay any other proceedings in relation to such project" (§ 133c). Therefore it is immaterial to present purposes whether, as the plaintiff claims to have alleged in his complaint, bonds were issued under the provisions of chapter 33a, or under and pursuant to §§ 466-472 of the General Statutes, which, the trial court ruled, would have to be determined as a question of fact. As we have stated, it is contemplated that the town may, at least in the first instance, make expenditures in connection with the construction of sewers from funds other than those derived from assessments or service charges, and may issue bonds to obtain such funds, and so far as appears from the complaint, the expenditures mentioned therein were within this authority possessed by the town. Also, if it be assumed that the special act or the public act, or both, contemplate or require that an assessment of benefits be made before commencing construction, the complaint does not allege that there has been a failure of performance of duty in that respect. For the foregoing reasons the first count failed to set up a tenable cause of action against these defendants.

The grounds upon which the demurrer to the second count was sustained set up failure to negative the taking of prescribed steps toward, and the making of, an appropriation by the town, in accordance with the special acts creating a department of finance in Milford (18 Special Laws, p. 443; 20 Special Laws, p. 1007) or the making of an appropriation as provided for the issue of bonds under § 466 of the General Statutes; also a failure to allege that conditions as to aggregate indebtedness of the town were not such as to meet the requirements of § 470 of the General Statutes. The complaint counts and relies upon a claim that the town had no authority to make expenditures, of the nature and for the purposes alleged, from town funds derived from appropriations and issuance of bonds, and it neither makes nor involves any contention that the requirements, just mentioned, for appropriations and issue of bonds were not complied with; therefore failure to negative such compliance was not good ground of demurrer. However, another ground was similar in practical effect to that upon which the demurrer to the first count was sustained and, for the reasons we have stated as to the latter, is equally decisive as to the second count. Therefore the trial court properly sustained this demurrer and it is immaterial that it placed its ruling upon grounds other than that which we find determinative. *Giannattasio* v. *Silano,* 115 Conn. 299, 301, 161 Atl. 336; *Aetna Life Ins. Co.* v. *Richmond,* 107 Conn. 117, 119, 139 Atl. 702.

There is no error.

In this opinion the other judges concurred.