STATE EX REL. JOSEPH J. RASLAVSKY *v.* ROLAND P. BONVOULOIR

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued October 9—decision released December 3, 1974

*Peter B. Sullivan,* for the appellant (plaintiff).
*Leo P. Carroll,* for the appellee (defendant).

MacDonald, J. The plaintiff, Joseph J. Raslavsky, has appealed from the judgment rendered by a state referee for the defendant, Roland P. Bonvouloir, in an action in quo warranto, brought to determine the validity of the plaintiff's discharge from the position of chairman of the board of finance of the city of Milford, and the defendant's subsequent appointment to that office.

Upon a hearing before the referee the following facts were found: Milford is a specially chartered municipal corporation, whose charter establishes a board of finance as part of the city government. The plaintiff was appointed to the board for a five-year term, commencing January 1, 1970. The appointing authority is the mayor, subject to the approval of such appointments by the board of aldermen. On January 2, 1973, the mayor informed the plaintiff by letter that he intended to request the board of aldermen at its meeting on January 8, 1973, to approve his removal of the plaintiff from the board of finance for cause, and that the plaintiff might appear and would be given an opportunity to present to the board, either verbally or in writing, any reasons why he felt the mayor's action should not be taken. Prior to sending the January 2, 1973 letter the mayor did not himself hold a hearing on the plaintiff's removal. The letter, which for reasons hereinafter appearing need not be discussed in

detail, contained eleven specific allegations of the plaintiff's failure adequately to perform his appointed duties. The plaintiff was provided with an opportunity to be heard and no claim was made that the hearing before the board of aldermen was unfairly conducted.[1]

In April of 1972 the board of aldermen instituted a mandamus action against all of the members of the board of finance seeking to require the board of finance to act on certain requests for appropriations then pending before that board. The board of finance had refused to act on these requests because a majority of the board felt that they needed quarterly balance sheets and cash flow projections to enable them to act responsibly.[2]

The charter imposed a number of absolute obligations upon the chairman of the board of finance, including: the obligation to see that his board shall keep records, make recommendations to the board of aldermen and provide such information as may be requested by the board of aldermen; to recommend to the board of aldermen all transfers of appropriations in budget accounts; to call regular meetings of the board of finance to be held on the second Monday of every month; and, after November 8, 1972, an obligation that the board of finance submit its recommendations, affirmative or negative, on any request, to the board of aldermen no later than five days before the second regular meeting of the board of aldermen after official receipt of such a request.

---

[1] The finding, upon which any attack has been expressly abandoned, does not explicitly state the result of the hearing. The referee's memorandum of decision, however, indicates that the board approved the removal by a majority vote.

[2] A detailed account of this dispute appears in *Raslavsky* v. *Moore*, 167 Conn. 363, 355 A.2d 272.

The plaintiff called no meetings in November or December, 1972, although it appears from the record that a meeting was scheduled for November 11, 1972, and that a meeting was held in December, 1972, which the plaintiff failed to attend. Of the five members of the board in December, 1972, two met three times during the month of December, and the other three failed to attend. After the charter revision of November, 1972, if no meeting were called by the board of finance, no matter before that board for deliberation could be submitted to the board of aldermen. The plaintiff was chairman of the board of finance when it failed to act, between June of 1972 and the date of his removal, on requested bonding of 3.2 million dollars. For reasons which appear obvious from the foregoing facts, it was expressly found, without attack on this appeal, that the mayor was justified in finding that the plaintiff had failed to conduct himself as a member and as chairman of the board of finance, and that he had failed to act in the best interests of the city of Milford. On the basis of these findings the referee concluded that the plaintiff had been properly removed for cause and that the defendant was properly appointed to fill the vacancy thus created.

The plaintiff has attacked his removal on two grounds. Substantively, he claims that the referee erred in concluding that he was properly removed for cause. Procedurally, he claims a due process violation in the failure of the mayor himself to hold a hearing prior to sending the January 2, 1973 letter.

As to whether sufficient cause existed to support the plaintiff's removal, the officer or board having the power of removal is the sole judge of the exist-

ence of the cause alleged for removal, and this judgment is conclusive if there is evidence to support it. *McNiff* v. *Waterbury,* 82 Conn. 43, 46, 72 A. 572; 56 Am. Jur. 2d, Municipal Corporations, § 327. It is, however, for the court to determine whether the cause is sufficient as a matter of law, that is, whether it constitutes a proper ground for removal. *McNiff* v. *Waterbury,* supra; *Wilber* v. *Walsh,* 147 Conn. 317, 319, 160 A.2d 755. The cause must be reasonable and not merely a frivolous one. *Bolton* v. *Tully,* 114 Conn. 290, 295, 158 A. 805. Willful neglect of duty is in itself sufficient cause for removal. 56 Am. Jur. 2d, op. cit. § 317. The referee was clearly justified in finding that the plaintiff's failure to convene the board of finance and to consider the budgetary requests before it constituted willful neglect of his duty in direct contravention to his obligations under the charter. The plaintiff has not seriously contested the referee's findings in this regard and the record presents more than adequate support for his removal for cause.

With respect to the claim of procedural violation of due process, it should be noted that although the charter delineates the method of appointment, it is silent as to the power and method of removal. The plaintiff concedes, and correctly so, that the power to appoint creates the power to remove. It is an incident of the power to appoint and is in its nature an executive power. *Myers* v. *United States,* 272 U.S. 52, 161, 47 S. Ct. 21, 71 L. Ed. 160. This power is of two types, namely, the power to remove at will, and the power to remove for cause with its attendant requisites of notice and hearing. Where the tenure of appointment is unlimited or indefinite, the power to remove at will may be implied, the removal thus becoming solely a matter of executive discre-

tion. Where the term or tenure is fixed for a definite period of time, however, the power to remove at will cannot be implied and such appointee may be removed only for cause and not without notice and an opportunity to be heard. The authorities apparently are in accord that an appointment for a definite term carries with it the right to serve the full period unless sooner removed for cause. See *State ex rel. Mosconi* v. *Maroney,* 191 Mo. 531, 90 S.W. 141; 4 McQuillin, Municipal Corporations (3d Ed.) § 12.232; 63 Am. Jur. 2d, Public Officers and Employees, § 179; note, 99 A.L.R. 336, 363–64. See also authorities discussed in *State ex rel. Doherty* v. *Finnegan,* 25 Conn. Sup. 390, 393–95, 206 A.2d 477.

The charter is the fountainhead of municipal powers. It originates and defines the powers of government and the methods of governance and it should, among other instructions, delineate the method of removal and evolve a procedure that comports with due process. Where this is not done the courts must be cautious in creating or affirming a proper procedure for removal. Although substantial compliance with due process must be required, the courts should seek to sustain any reasonable attempts to satisfy such requisites. This court has declined in the past to impose upon the municipal decision-making process the same degree of formality that would be required of a court. *McNiff* v. *Waterbury,* 82 Conn. 43, 45, 72 A. 572.

The plaintiff, although duly noticed and given an opportunity to be heard, contends that the hearing before the board of alderman is of no legal force and effect in that the mayor, alone, as appointing authority, has the sole province to weigh the ques-

tion of cause for removal. If this court were to sustain that contention, however, it would, in effect, destroy the distinction that the requirements of due process have impressed upon the two types of removal power, and the only difference between the executive's power to remove at will and the power to remove for cause would be the additional requirement, in the cause situation, of notice and a hearing prior to the formal announcement of the executive's decision. In form, the decision processes differ, but we would ignore human nature to say that in substance they are not the same. Certainly, greater protection is afforded to a municipal officer whose removal is sought by the executive when the question of cause is submitted to an impartial board for approval or disapproval. Absent specific provision in the charter for removal—a defect which we urge be remedied wherever applicable by charter revision —a procedure that mirrors the method of appointment cannot be said to violate due process.

The conclusion reached by the referee cannot be disturbed.

There is no error.

In this opinion the other judges concurred.