DOMINIC ARMINIO *v.* JAMES A. BUTLER ET AL.

BOGDANSKI, PETERS, HEALEY, WRIGHT and ARMENTANO, Js.

Argued December 4, 1980—decision released February 17, 1981

*Juri E. Taalman,* with whom, on the brief, was *James P. White, Jr.,* for the appellants-appellees (defendants).

*Arthur D. Friedman,* with whom was *Steven H. Levy,* for the appellee-appellant (plaintiff).

ARMENTANO, J. The plaintiff was a legal resident, elector and taxpayer of the town of Trumbull, in addition to his official position as chairman of the Trumbull town council (hereinafter the council). The defendants were Trumbull town officials, namely: the first selectman, the director of finance and the town treasurer. The suit involves the town budget for fiscal year 1978–79. The facts are not in dispute: Prior to February 7, 1978, the first selectman (hereinafter the selectman) prepared a proposed $22,288,888 budget for fiscal year 1978–79 and submitted it to the Trumbull board of finance (hereinafter the board). The board reviewed the proposal and adopted a modified budget of $22,271,889, which was submitted to the council. The council adopted an amended budget in the amount of $22,161,453. The adopted budget was sent to the selectman for his approval, a practice that had been followed in previous years. Instead of approving it, as selectmen routinely did in the past, he exercised his claimed power to veto it. When the council refused to consider a vote to override the veto because it felt that the selectman had no power to veto an adopted budget, the selectman instructed the other defendants to implement the budget recommended by the board.

After payments were made pursuant to the board's proposed budget, the plaintiff commenced this action seeking a temporary and permanent injunction, a declaratory judgment determining which budget proposal was the lawful one and a judgment holding the defendants personally liable for any funds wrongfully dispersed. In a counterclaim the defendants sought a declaratory judgment determining whether the selectman had the authority to veto the council's adopted budget, and whether

the board's proposed budget became the lawful one when the council declined to vote to override his veto.

The trial court rendered judgment in part for the plaintiff on the complaint and on the counterclaim by finding that the lawful town budget was the one adopted by the council, and that the selectman had no power to veto it. The defendants have appealed from that decision. The court refused, however, to hold the defendants personally liable for disbursements made pursuant to the board's budget proposal, but not authorized by the budget adopted by the council. From that conclusion the plaintiff has cross-appealed.

## I

The resolution of this appeal rests on an interpretation and construction of the charter of the town of Trumbull (hereinafter the charter). Chapter II of the charter[1] is entitled "Adoption of Legislation." It gives the selectman the power to veto action taken by the council.

Chapter IV, entitled "Adopting the Annual Budget," contained four sections outlining a

---

[1] Chapter II, § 6, of the charter provides: "Every action, except an emergency action, election of Council officers, appointment of the Clerk of Council, appointment of an Acting First Selectman and adoption of Rules of Procedure, shall, within, three (3) days of its passage, be submitted to the First Selectman for his approval. The First Selectman shall sign the proposed legislation, if he approves it. If he disapproves of the proposed legislation, he shall within five (5) days following receipt of the same return it to the Clerk of the Council with a statement of the reasons for his disapproval which statement shall be transmitted by the Clerk to the Council at its next meeting. The Council may hereafter pass the proposed legislation by an affirmative vote of at least 2/3 of its entire membership. Final passage shall mean adoption by the Council and

detailed, budget formulation procedure. Section 1[2] made the selectman "responsible for the preparation of a proposed budget for each fiscal year to be submitted to the Board." In accordance with § 2,[3] the board considered the proposed budget and submitted it, with any changes, to the council. If the board failed to submit its recommended budget by a date certain, then the selectman's proposal became the board's recommendation to the council.

---

approval by the First Selectman as provided herein or, in the event of disapproval by the First Selectman, a subsequent adoption of such legislation by 2/3 vote of the entire membership of the Council. If the First Selectman neither approves nor disapproves of said legislation within the time required, no further action shall be required by the Council for final passage. Unless such legislative action shall be designated emergency legislation as provided herein, or shall specify a later effective date, it shall become effective on the 15th day following publication, except with reference to the annual budget which shall become effective as hereinafter provided."

[2] Chapter IV, § 1, of the charter provides in part: "The First Selectman shall be responsible for the preparation of a proposed budget for each fiscal year to be submitted to the Board of Finance, annually, not later than the first (1st) Tuesday of February. The proposed budget shall be a budget for all departments of town government including the education department. It shall be prepared according to a classification system adopted by the Board of Finance and shall take into consideration detailed estimates of proposed expenditures and receipts furnished to the First Selectman by the several departments and other divisions of the town government."

[3] Chapter IV, § 2, of the charter provides:

"A. The Board of Finance shall conduct a public hearing on the budget proposed by the First Selectman and at said meeting or any adjournment thereof it shall hear all electors or taxpayers who may desire to be heard relative to the proposed budget.

B. The Board of Finance shall, not later than seven (7) days prior to the hearing provided in Chapter IV, Section 2 A, cause to be published [in] a newspaper having a general circulation in the Town the budget proposed by the First Selectman including in parallel columns, for each item, the sum budgeted for the current fiscal year and the sum requested by each department or division for the next fiscal year, the sum proposed by the First Selectman and also the estimated tax rate.

C. The Board of Finance shall consider the budget proposed by the First Selectman at a duly warned meeting and shall act upon

In § 3,[4] the council's duties were laid out. It was given the authority to "adopt a budget," within a specified time period, after considering the board's

said proposed budget at said duly warned meeting. It shall:

(a) Adopt and Approve the budget proposed by the First Selectman; or

(b) Make such changes in any estimates or appropriations contained in the proposed budget as it shall deem proper; and/or

(c) Add appropriations or receipt items not contained in the proposed budget.

The Board of Finance shall, in any event, not later than the fourth (4th) Tuesday of March, submit to the Council its recommended budget for the next fiscal year."

[4] Chapter IV, § 3, of the charter provides in part:

\* \* \*

"B. The Council shall consider the budget recommended by the Board of Finance and shall adopt a budget not later than the third (3rd) Tuesday of April. If the Council shall not have adopted a budget on or prior to said date, then the budget recommended by the Board of Finance shall be deemed to have been finally adopted by the Council as of said date.

C. The Council shall have the following powers with respect to any item in the budget recommended by the Board of Finance:

(a) It shall have the power to reduce any item in the budget recommended by the Board of Finance by a majority vote of the Council members present and voting; and

(b) It may increase any item in said budget or add new items to said budget only on a two-thirds affirmative vote of the entire membership of the Council provided, however, that new items may be added by the Council only to the extent that such items were included in the budget proposed by the First Selectman and provided further that any increase of any items in said budget shall not be in excess of the amount for said item in the budget proposed by the First Selectman.

D. If the Board of Finance shall fail to act, as set forth upon the budget proposed by the First Selectman or shall have failed to submit a recommended budget to the Council within the time limited by this Chapter, then the budget proposed to the Board of Finance by the First Selectman shall be considered by the Council. The Town Council shall hold a public hearing on the budget proposed by the First Selectman after giving notice, all as set forth in Chapter IV, Section 3 A. The Council shall have, when considering and acting upon the budget proposed by the First Selectman, the same powers granted to the Board of Finance under the provisions of Chapter IV, Section 2 C, and shall exercise said powers by the vote of a simple majority of its members present and voting."

recommendation. If the council failed to meet the time deadline, "then the budget recommended by the Board of Finance shall be deemed to have been finally adopted by the Council."

By virtue of § 4,[5] the budget was effective ten days after adjournment of the council meeting at which it was adopted. If a petition for referendum was filed within that time period, the effective date was extended "until it has been approved or modified by such referendum."

The first question is whether the selectman had the authority by virtue of chapter II, § 6, to veto a budget adopted by the council, or whether his role in the chapter IV budget formulation process was limited to preparing a proposed budget and submitting it to the board.

It is elementary that "[t]he charter is the fountainhead of municipal powers. It originates and defines the powers of government and the methods of governance . . . ." *State ex rel. Raslavsky* v. *Bonvouloir*, 167 Conn. 357, 362, 355 A.2d 275 (1974). In the construction of charters, ordinarily the rules of statutory construction are applied. 2 McQuillin, Municipal Corporations (3d Ed. Rev.) § 9.22, p. 685. "In arriving at the intention of the framers of the charter the whole and every part of the instrument or enactment must be taken and compared together. In other words, effect should be given, if possible, to every section, paragraph, sentence, clause and word in the instrument and related laws. 'The real inten-

---

[5] Chapter IV, § 4, of the charter provides: "Any action by the Council in adopting the Town budget shall not be effective until ten (10) days after the adjournment of the meeting at which any such action is taken, provided that, if a petition for referendum has been filed, as hereinafter provided, such action shall not be effective until it has been approved or modified by such referendum."

tion when once accurately and indubitably ascertained, will prevail over the literal sense of the terms. When the words used are explicit, they are to govern, of course. If not, then recourse is had to the context, the occasion and necessity of the provision, the mischief felt, and the remedy in view.' The language employed must be given its plain and obvious meaning, and, if the language is not ambiguous a court cannot arbitrarily add to or subtract from the words employed." 2 McQuillin, loc. cit.; see *Sillman* v. *Sillman,* 168 Conn. 144, 148–49, 358 A.2d 150 (1975); *International Business Machines Corporation* v. *Brown,* 167 Conn. 123, 133–34, 355 A.2d 236 (1974).

A charter of a city must be construed, if possible, so as reasonably to promote its ultimate purpose. *Connelly* v. *Bridgeport,* 104 Conn. 238, 256, 132 A. 690 (1926). A charter must receive a reasonable construction and must be examined in its entirety. Its parts must be reconciled and made operative so far as possible. *Garbaty* v. *Norwalk Jewish Center, Inc.,* 148 Conn. 376, 382, 171 A.2d 197 (1961); *Cislo* v. *Shelton,* 35 Conn. Sup. 645, 656, 405 A.2d 84 (1978).

Another rule is that if there is apparent conflict between two provisions, they will be construed as to make both effective. In order to arrive at the intent of the framers of the charter, it is proper to consider the objects sought to accomplish, and the practical situation they were attempting to provide for. 2 McQuillin, op. cit., p. 686; see *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 97, 103, 291 A.2d 721 (1971); *Hutchinson* v. *Board of Zoning Appeals,* 140 Conn. 381, 385, 100 A.2d 839 (1953).

Applying these rules of construction to the charter at issue, the trial court's decision must be upheld for several reasons.

First, chapter II, § 6, gives the selectman the power to veto any action after its "passage" by the council. Under chapter IV, § 3, the council has the power to "adopt" a budget. The former term means "the passing of a legislative measure or law." The latter word is defined as "to accept formally: acknowledge or enact as true, wise, fitting, germane" and "to take up or accept esp. as a practice or tenet often evolved by another." Webster, Third New International Dictionary. By the use of these different terms, the drafters intended that the selectman's veto power over actions "passed" by the council did not apply to the council's "adoption" of a budget.

Second, the selectman's option to express his disapproval is set out in a general provision and is followed by the budget-formulation process which is a particular provision. "In construing municipal charters this broad principle is usually adopted: Where the general provisions of a charter are followed by particular provisions, the general provisions are limited and restricted by the particular provisions." 2 McQuillin, loc. cit.; see *Atwood* v. *Regional School District No. 15,* 169 Conn. 613, 622, 363 A.2d 1038 (1975); *Kelly* v. *Dewey,* 111 Conn. 281, 292, 149 A. 840 (1930).

In the budget-formulation chapter, the procedure is clearly and particularly laid out. The selectman's sole responsibility is "the preparation of a proposed budget . . . to be submitted to the Board." The council's task is to "adopt a budget." " 'Prepare' is defined as 'to make up beforehand for some pur-

pose; . . . to get ready beforehand; to draw up.' Webster, Third New International Dictionary." *Larke* v. *Morrissey,* 155 Conn. 163, 173, 230 A.2d 562 (1967). The definition of "adopt" has already been discussed. The right to exercise a veto after the council had adopted a budget is not granted to the selectman in chapter IV and cannot be implied from his obligation to prepare a budget proposal and to submit it to the board.

The trial court found two additional particular chapters in the charter that followed the general provisions of chapter II, § 6: chapter V related to appropriations from the general fund, and chapter VI pertained to bond issues. They both specifically made actions taken by the council pursuant to these chapters subject to the selectman's chapter II, § 6, veto power. This finding has not been disputed on appeal. It is clear that if the framers of the charter intended the veto power likewise to apply to the budget-formulation process, a similar reference to chapter II, § 6, would have been included in chapter IV.

Third, chapter IV, § 4, provided that the budget adopted by the council became effective after *"adjournment* of the meeting at which any such action is taken," subject to modification only by referendum. (Emphasis added.) If the selectman had the power to veto the adopted budget, the corresponding right of the council to override the veto likewise would have to be recognized. Since the drafters expressed an intent by the use of the word "adjournment" that no reconsideration by the council of its adopted budget should occur, the drafters did not intend that the selectman would have the power to employ his chapter II, § 6, veto powers in the budget-formulation process.

Finally, we agree with the trial court's finding that the exercise of the selectman's veto power would emasculate the referendum provision of chapter IV, § 4, which provided for a ten-day period after the council adopted a budget during which a petition for referendum could be filed. If the power granted to the selectman under chapter II, § 6, could be exercised in the budget-formulation process, the time during which the petition could be filed might be effectively cut down to two days. Such a result was not the intent of the drafters of the charter.

Since we agree with the trial court that the selectman had no authority to veto a budget properly adopted by the council, there can be no error in its conclusion that the budget adopted by the council was the lawful one for fiscal year 1978–79.

## II

Although there were over thirty appropriations in the budget suggested by the board that did not exist in the budget adopted by the council, actual expenditures were made only on one item not included in both: the salary account for an executive aide to the selectman. In his complaint, the plaintiff seeks personal restitution from the defendants for the salary disbursed to the aide.

The trial court refused to make such an order and imposed no personal liability because of its finding that the defendants "acted in good faith in the face of a bona fide dispute over the construction [of the charter] . . . ." The court did order, however, that the defendants "comply with the ruling of this court with respect to future disbursements." There was no allegation that the defendants failed to follow the second order.

On the cross appeal, the plaintiff first claims that any "good faith" defense should not have been considered by the court because it was not specially pleaded by the defendants. Good faith need not be specially pleaded. Practice Book § 164.

The second claimed error is that there was insufficient evidence to support the conclusion that the defendants acted in good faith. There are sufficient facts found in the memorandum of decision and in the uncontested evidence in the record to support the court's conclusion that the defendants "acted in good faith in the face of a bona fide dispute over the construction" of the charter. In fact, the parties stipulated that the dispute between the parties was a bona fide one. The trial court's determination is not clearly erroneous. See *Stelco Industries, Inc.* v. *Cohen,* 182 Conn. 561, 563, 438 A.2d 759 (1980); Practice Book § 3060D.

The plaintiff's final argument on the cross appeal is that good faith is not a proper defense to his claim for restitution of the misappropriated town funds. There is no question that the expenditures for the services of the executive aide were included in the budget approved by the board, but were not authorized by the lawful budget adopted by the council.

The general rule is clear. "An officer may pay out public money only in the manner prescribed by law. Money disbursed by him in an unlawful manner is paid out at his peril. Accordingly, where funds are disbursed illegally by public officers or upon their authority, they are personally liable therefor . . . . Even the fact that illegal expenditures were made by officers under the honest belief that they were authorized does not prevent recovery

from such officers. . . . And, although there is authority which points to a contrary conclusion, the fact that funds expended illegally were expended for a useful purpose is no defense to an action for their recovery against the officer who disbursed them wrongfully." 4 McQuillin, op. cit., § 12.217 and citations therein; see *Sullivan* v. *Willis,* 116 Conn. 9, 12, 163 A. 407 (1932); *New Haven* v. *Fresenius,* 75 Conn. 145, 149–52, 52 A. 823 (1902); 26 C.B.J. 156, 164–65. "[T]he fact that they personally receive none of the money and act in good faith, believing that their conduct is for the best interest of the municipality, does not excuse them from liability where, in doing so, they disregard plain statutory and constitutional provisions." 56 Am. Jur. 2d, Municipal Corporations § 288.

The rule holding a public official personally liable for unauthorized expenditures, even if made in good faith, is a necessary one. A municipal taxpayer is an equitable owner of municipal funds, while the officers of the municipal corporation are the trustees in the management and application of them. *Murray* v. *Egan,* 28 Conn. Sup. 204, 209, 256 A.2d 844 (1969); 56 Am. Jur. 2d, supra. "Any other [rule] would make futile the opportunity afforded a taxpayer to redress wrongs, when such wrongful acts are the result of official action without jurisdiction with resultant expenditure or waste of public funds." *Knapp* v. *Fasbender,* 278 App. Div. 970, 971, 105 N.Y.S.2d 780 (1951); 18 McQuillin, op. cit., § 52.29.

We will, however, recognize an exception to the general rule. A municipal officer is not liable for illegal payment of funds if the expenditure is for a public purpose, the municipality has received fair

value for the money expended, the official did not receive personal profit, and the source of the authority violated by the officer is clearly ambiguous. See, e.g., *Adams* v. *Bryant,* 236 Ark. 859, 370 S.W.2d 432 (1963) ; *English* v. *Smith,* 5 Conn. Sup. 93, 95, 196 A. 781 (1937), aff'd on other grounds, 123 Conn. 572, 196 A.2d 781 (1938) ; *McCarty* v. *City of St. Paul,* 279 Minn. 62, 155 N.W.2d 459 (1967). See also *Stanson* v. *Mott,* 17 Cal. 3d 206, 551 P.2d 1 (1976) (standard of due care).

This exception is just as important as the general rule. Without it, few persons of responsibility would be found willing to serve as public officers, which oftentimes requires expenditures of time, money and effort far beyond the compensation received, if any.

In the case before us, there is no allegation or evidence of waste, fraud, private profit or collusion. Furthermore, after a review of the charter sections in dispute, we are of the opinion that they are clearly ambiguous.

In *New Haven* v. *Fresenius,* supra, the city treasurer violated the city charter, and was held personally liable for lost bank interest on city funds even though he claimed he acted in good faith. The language of the charter at issue in that case, however, was not ambiguous and left no room for a bona fide dispute over its interpretation. This fact distinguishes the *New Haven* v. *Fresenius* case from the one before us.

There is no error.

In this opinion the other judges concurred.