[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These appeals are brought separately by plaintiffs Edward Benenson (Benenson) and Bull's Head Medical Associates (Bull's Head) against defendant Board of Representatives of the City of Stamford (Board). Plaintiffs appeal the Board of Representatives' affirmance of the zoning board's plan to rezone plaintiff's property from a C-L zone (limited business district) to a C-N zone (neighborhood business district). These appeals are on remand from the Supreme Court, Stamford Ridgeway Associates v. Board of Representatives, 214 Conn. 407 (1990). The named plaintiff, Stamford Ridgeway Associates, did not participate in this appeal.
Notwithstanding the numerous grounds for which the Supreme Court remanded, the parties have stipulated that the only issue which remains to be resolved is the legal effect on these plaintiffs of the Board of Representatives' vote on the zoning CT Page 6724 board's amendment of the zoning regulations.
 I
The underlying facts of these appeals were summarized by the Supreme Court as follows: On March 11, 1985, the zoning board of the City of Stamford approved a comprehensive rezoning plan for large areas of the city, on a neighborhood basis, that was to become effective March 26, 1985. The rezoning consisted of eight separate applications brought by the zoning board to itself. Each application covered large sections of the City of Stamford and included areas for which various zone changes were proposed, as well as other areas that were to remain unchanged. Application No. 84-053, which is involved in these appeals, was the eighth application initiated by the zoning board as part of its comprehensive rezoning plan, proposed to rezone various areas in the Downtown/Bull's Head area. . . .
The plaintiffs in these appeals are owners of property located in the Downtown/Bull's Head neighborhood who were adversely affected by the proposed rezoning. Pursuant to C-552.2 of the Stamford charter, the plaintiffs each filed separate petitions with the zoning board challenging the zoning board's proposed plan to rezone their respective areas and requesting that the matter be referred to the board of representatives. The chairman of the zoning board, acting in accordance with C-552.2, by letter dated March 29, 1985, referred its findings, recommendations and reasons in connection with its action in approving, as modified, application No. 84-053, to the board of representatives.
The board of representatives, which consists of forty elected members, received sixteen petitions; several of the petitions pertained to zone changes within application No. 84-053. On May 2, 1985, the board held a public hearing concerning the various petitions filed. On May 6, 1985, the board voted on thirteen of the sixteen petitions. It rejected seven of the petitions, approved three and took no action on three. The board took no action on three of the petitions because of the lack of majority votes of the entire membership of the board needed on each petition to reject the proposed zone changes. Id. 409-11. (original footnotes omitted)
The vote on these petitions was 15 in favor of the proposed amendment, 20 opposed, 1 abstention and 1 not voting.
 II
The court heard the parties with respect to the issue of aggrievement and finds each of the parties to be aggrieved by CT Page 6725 virtue of their continuous ownership of the properties involved to and including the day of trial. Goldfeld v. Planning 
Zoning Commission, 3 Conn. App. 172.
 III
Plaintiff Bull's Head argues that the voting procedure used by the Board was illegal in one or more of the following respects:
 (1) it did not allow Motions to be framed so a petition could possibly receive 21 affirmative votes;
 (2) despite Charter Section 556.1, the Chair stated motions to sustain the Zoning Board were approved even if they failed to secure 21 affirmative votes and even if they failed to secure a majority vote as long as there were not 21 negative votes;
 (3) it allowed 21 negative votes to sustain a petition even though Charter Section 556.1 requires affirmative votes and
 (4) it did not allow a second Motion after the Board failed to approve the zoning board so that the petition could be supported.
Plaintiff Benenson joins in these arguments. Plaintiffs also argue that the Board's interpretation of the voting results is contrary to Schlesinger v. Board of Representatives D.N. 01-97-44, J.D. of Fairfield at Stamford, Memorandum of Decision, September 9, 1980, Novack, J.
This appeal turns on the meaning of the phrase "affirmative vote" as used in section 556.1 of the Stamford Charter. In construing a city charter, "the rules of statutory construction generally apply." Id. Norwich v. Norwalk Wilbert Vault Co., supra. A city charter "must be construed, if possible, so as reasonably to promote its ultimate purpose." Arminio v. Butler, 183 Conn. 211, 218, 440 A.2d 757 (1981). "`In arriving at the intention of the framers of the charter the whole and every part of the instrument must be taken and compared together. In other words, effect should be given, if possible, to every section, paragraph, sentence, clause and word in the instrument and related laws. "The real intention when once accurately and indubitably ascertained, will prevail over the literal sense of the terms. When the words used are explicit, they are to govern, of course. If not, then recourse is had to the context, the occasion and necessity of the CT Page 6726 provision, the mischief felt, and the remedy in view." The language employed must be given its plain and obvious meaning, and, if the language is not ambiguous a court cannot arbitrarily add to or subtract from the words employed.' 2 McQuillin, [Municipal Corporations (3d Ed. Rev) 9.22, p. 685]." Id., 217-18. "A charter provision, like a statute . . . must be definite and certain. An individual must be able to determine whether his or her proposed activity is prohibited." 2 E. McQuillin, Supra, 9.22, p. 916. Stamford Ridgeway Associates,214 Conn. at 423-24. "Words in a statute must be given in their plain and ordinary meaning . . . unless the context indicates that a different meaning was intented." Id. at 425.
Section 556.1 of the Stamford Charter provides:
"In deciding all matters referred to the board of representatives pursuant to this chapter, the affirmative vote of a majority of the entire membership of said board shall be required. (S.A. No. 619, 1953)."
Section 552.2 provides: "After the effective date of the master plan, if the owners of twenty per cent or more of the privately-owned land in the area included in any proposed amendment to the zoning map, or if the owners of twenty per cent or more of the privately-owned land located within five hundred feet of the borders of such area, file a signed petition with the zoning board, within ten days after the official publication of the decision thereon, objecting to the proposed amendment, said decision shall have no force or effect but the matter shall be referred by the zoning board to the board of representatives within twenty days after such official publication, together with written findings, recommendations and reasons. The board of representatives shall approve or reject such proposed amendment at or before its second such referral. When acting upon such matters the board of representatives shall be guided by the same standards as are prescribed for the zoning board in section 550 of this act. The failure of the board of representatives either to approve or reject said amendment within the above time limit shall be deemed as approval of the zoning board's decision. (S.A. No. 619, 1953)."
"The board of representatives is composed of two members elected from each of the twenty voting districts into which the city is divided. . . . The legislative power of the city is specifically vested in the board of representatives." Burke v. Board of Representatives, 148 Conn. 33, 36 (1961). (citations omitted) "[The] board, in reviewing the action of the zoning board, is called upon to perform a legislative function." Id. at 39.
Neither the industry of counsel nor our own research has CT Page 6727 uncovered any judicial precedent to guide our inquiry into the meaning of "affirmative vote."
The legislative history of the act has also failed to provide guidance.
Words of a statute must be construed according to their commonly approved usage. General Statutes 1-1(a). Cos Cob Volunteer Fire Co. No. 1 Inc., v. FOIC, 212 Conn. 100, 105. The word "affirmative" has been defined as "that which declares positively; that which avers a fact to be true; that which establishes; the opposite of negative." Black's Law Dictionary, Rev'd 5th Ed. (1979) at 55. Additionally, the word affirmative has been defined as "[a]n answer "yes"; something beyond passive tolerance or acceptance. The side supporting a proposition; bearing the burden of proof. Ballentine's Law Dictionary, Rev'd 3rd Ed. (1960 at 46.
Section 556.1 and section 552.2 must be construed together to determine what the legislature intended by the language "affirmative vote" because they are in pari materia. In Schlesinger v. Board of Representatives, supra, the issue before the court was whether the vote of the board rejecting plaintiff's application for a zone change complied with sections 552.2 and 556.1 of the Stamford Charter. In Schlesinger the court agreed with that plaintiff's claims that the board failed to act by an affirmative vote of a majority of the entire membership of the board in accordance with sections 556.1 and 552.2 and, therefore, the Board failed to approve or reject the proposed zoning map change. The Schlesinger court found that "[i]n the absence of 21 votes for or against a particular zoning amendment there could be no decision by the defendant Board of Representatives." Schlesinger, supra at 4. The Schlesinger court remanded the matter to the board for reconsideration and revote. A fair reading of Schlesinger leads to the interpretation that an "affirmative vote" means a concurring vote or the collective, affirmative action of casting a vote rather than a "yes" vote because 21 votes were needed to approve or reject the proposed amendment. This interpretation supports the reading of the two sections together because if the board could only approve the proposed amendment by a "yes" vote the last sentence of section 552.2 would be superfluous. The last sentence states that "[t]he failure of the board of representatives either to approve or reject said amendment within the above time limit shall be deemed as approval of the zoning board's decision."
Under 552.2 and 556.1 the proposed amendment to a zoning map can be approved three ways: (1) by a vote of 21 members of the entire board approving the proposed amendment, (2) by the CT Page 6728 board's failure to approve or reject the proposed amendment after a vote is taken or (3) by the board's failure to consider the matter at or before its second regularly scheduled meeting. In contrast, there is only one way for the board to reject the amendment, and that is by a vote of 21 members of the entire board voting against the proposed amendment. A system of weighted voting such as this has a salutory purpose and has been judicially approved. Whelan v. Heinmann, 373 F. Sup. 353. It is found that the affirmative vote requirement in section 556.1 means that either the proponent or opponents of the proposed amendment have to receive 21 votes in order for the board to "decide[1] the matter. If no decision is made by the board, then the last sentence of 552.2 becomes applicable and the zoning board's decision will be approved by the Board's failure to make a decision. Squicciorini v. Planning Board, 367 N.Y.S.2d 845.
Plaintiffs' four separate arguments that the voting procedure was illegal boil down to the assertion that the Board acted improperly by voting on the proposed amendment and not the plaintiffs' petitions. We disagree.
Section 552.2 provides that the Board "shall approve or reject such proposed amendment. . . ." (emphasis added). Thus, the Board is mandated to vote on the amendment but is not required to vote on the petition. Plaintiffs have supplied no authority, judicial, statutory or parliamentary to support their position. The president of the Board did not act illegally, arbitrarily or in abuse of discretion when she declared that the zoning Board's action was sustained and the proposed amendment approved. Accordingly, the plaintiffs' appeals are dismissed.
MOTTOLESE, J.