ADAMS *v.* BRYANT.

5-2920                                         370 S. W. 2d 432

Opinion delivered September 16, 1963.

*D. B. Bartlett, Edward Patterson* and *Mark E. Woolsey,* for appellant.

*A. F. House* and *Harry E. Meek,* for appellee.

CARLETON HARRIS, Chief Justice. Appellants, plaintiffs below, brought a taxpayers' suit in which they sought injunctive relief against appellees, Light and Water Commissioners in the City of Clarksville. Appellants urged that City Ordinance No. 387, under which appellees were acting, was invalid; that certain expenditures made by appellees from surplus funds acquired in

the utility operations, were unlawful; an accounting was sought from appellees, as well as a judgment against them, for particular payments hereinafter set out that had already been made, and the court was asked to enjoin and restrain the commissioners from making such further expenditures. After the filing of an answer and various amendments to the pleadings, the case proceeded to trial before the chancellor, who, after taking the cause under advisement, rendered his opinion. The court found that "the Clarksville Light and Water Company"[1] was an agency of the City of Clarksville, empowered to perform those duties specifically outlined in the ordinance, and further found that the commission had performed its duties in accordance with the expressed desire of the City Council. The court refused to grant a judgment or issue an injunction, as prayed, but did direct that in the future "the agency do and perform only those acts which are necessary to operate the utilities, pay the debts, and to build up a sound business operating reserve from the profits of the organization and when that reserve has been established that all profits of the organization be paid in to the City Treasurer as a part of the General Revenue." Except for the directive, all relief sought by appellants was denied. A decree was entered in accordance with the opinion, and from such decree, appellants bring this appeal. For reversal, three points are relied upon as follows:

I. Ordinance No. 387 is invalid and does not create a valid utility commission or constitute appellees a valid commission or agency of the city of Clarksville.

II. Purchase of corporate stock was illegal; and appellees should be required to place the money back into the treasury with interest.

III. Appellees should be required to pay back into the city treasury with interest the $1,000 placed by them in the Dairy Expansion Fund.

---

[1] This is a trade name adopted by the members of the agency created by Ordinance No. 387 of the City of Clarksville.

— I —

In 1949, the city of Clarksville, which operated its own light and power plant, and water works system (originally acquired through municipal improvement districts), enacted Ordinance No. 387, creating a commission to be known as the "Clarksville Light and Water Commission of the City of Clarksville, Arkansas." In brief, the ordinance sets forth that the commission shall be composed of three qualified resident electors of the city of Clarksville, and provides that the commissioners shall be appointed by the City Council. Section 2 places the commission in full charge and authority of the light and water plants "with the power to operate and maintain them and to exercise all power necessary or incident to the management, operation and control of the properties for the furnishing of water and electricity to the inhabitants of the City of Clarksville."[2] Section 3 authorizes the commission to enlarge the plants and extend such services as may become necessary in order to serve the residents of the city, but further provides that the commission shall not have the power to increase the rates, nor power to issue revenue bonds or notes, without the approval of the City Council. Section 4 sets out that "out of any surplus in revenue after making provision for the payment of bonds and interest and operation, the Commission shall set aside a reasonable sum for the maintenance of the plant and the depreciation account. Any sums remaining after providing for the funds herein defined shall be declared to be 'net revenue' and the Commission at its discretion may use such part of the net revenue as may be necessary or proper for the extension or enlargement of the two plants or their distribution systems, *and any funds not so used shall be held by the Commission as reserve fund, to be used by the Commission as it deems best.*"[3]

The italicized portion, in large measure, was the basis for the disbursements that gave rise to this litigation. Section 5 states that the commissioners shall have

---

[2] The commission also operates the sewer system.

[3] Emphasis supplied.

"wide discretion in the exercise of the powers conferred upon them, it being the purpose of this ordinance to grant such commission the powers ordinarily exercised by the board of directors of a corporation, * * *'' and the section further provides the manner of removal of a commissioner for improper exercise of authority. Section 6 sets out that members of the commission shall not receive any compensation for services but shall be reimbursed for expenses incurred in the performance of duties.

The commission is presently composed of Leslie E. Bryant, Earl K. Johnston, and Wilson Jones.[4]

Appellants contend that the Chancellor erred in holding the ordinance valid, and they stoutly maintain that Act 95 of 1939 [Ark. Stat. Ann. §§ 19-4001 through 19-4033 (Repl. 1956)] should control. This act authorized the creation, in cities of the second class and incorporated towns, of a board to be known as "The Board of Public Utilities,'' and the statute provided that this board should have the sole and exclusive control of the maintenance, enlargement, and operations of electric light and water plants and sewerage systems owned by improvement districts, or where such districts had paid out and were under control of the city or town council. Appellants point out certain conflicts between provisions of this act and Ordinance 387, including the fact that the "Board of Public Utilities'' requires 5 members and, further, that a Board of Public Utilities cannot be created until the plan is first approved by a majority of the voters in an election. Other differences are cited, but we do not consider a discussion of this phase of appellants' argument to be necessary since Act 95 does not make compulsory the operation of utility plants by this board. Section 19-4001 simply provides that such a board *may* be created. Here, the citizens of Clarksville apparently did not desire to create the Board of Public Utilities, and the authority to operate the utilities, therefore remained in the City Council. We agree with the Chancellor, that in passing Ordinance 387, the city created an agency to operate the

---

[4] Bryant was one of the original commissioners, named in the ordinance, and has been continually reappointed.

utilities heretofore mentioned. The city had the express statutory power to own and operate these utilities [Ark. Stat. Ann. § 20-316 (Repl. 1956)], and we have held that a City Council may designate agents to act, within the scope of their agency, on behalf of the city. *Jonesboro* v. *Montague,* 143 Ark. 13, 219 S. W. 309, *Gladson* v. *Wilson,* 196 Ark. 996, 120 S. W. 2d 732.

The Clarksville Light and Water Commission was not delegated power of a legislative nature, (which would have been unlawful) as shown by the fact that the ordinance provides that the commission shall not have power to increase rates, nor to issue revenue bonds or notes; the commission was only given executive and administrative functions in carrying out the provisions of the law which authorized the city to own and operate the utilities. In other words, the commission was simply acting for the City Council. As was stated in *City of Mayfield* v. *Phipps,* 263 S. W. (Ky.) 37:

"The electric light and water committee named under the ordinance passed by the council of the city of Mayfield was merely the arm of the city government acting in an administrative capacity. The acts and doings of the committee were in legal contemplation, at least the acts and doing of the council, when concurred in and approved by the council. It is generally conceded that powers of a purely ministerial, administrative, or executive nature may be delegated by a municipal council to a committee or to some appropriate officer, although it cannot delegate to such committee the power to decide upon legislative matters properly resting in the judgment and discretion of the council."

We hold that the commission is but an agency of the City Council, and City Ordinance No. 387 is valid.

— II —

The record indicates that the management of the municipal utilities (light, water, and sewer) by the three commissioners has been quite successful. The systems have increased greatly in value, and the growth in electric sales has shown a substantial increase even though the

municipal population actually decreased. The record reflects that various projects have received financial support from the commission, said financial contributions being made from the surplus acquired from the utility operations. For instance, the commissioners subscribed to a $1,000.00 interest in a Dairy Expansion Fund; the commissioners paid part of the cost of constructing a municipal swimming pool sponsored by the City Council, and, *inter alia*, made contributions to the following: The College of the Ozarks, the Clarksville Chamber of Commerce, the Poultry Association, the purchase of municipal fire trucks, Christmas lighting of the streets of Clarksville, and lights for the high school football field. A $5,000.00 expenditure was made by the commissioners for the purchase of stock in Johnson County Frozen Foods, Inc., and several thousand dollars were expended for engineering fees for a city airport, a road to a new shoe factory and construction of a sea wall.

While, obviously, most of these expenditures have no direct connection with the operation of a utility plant, the fact remains that practically all were for the general benefit of the Clarksville area, and all apparently received public approval. Such expenditures had been made for a long period of years; all of the larger disbursements were approved by the city council, and tacit approval was given to the rest; some of the projects were approved at public elections.

Only two specific expenditures are challenged on this appeal. One relates to the purchase of $5,000.00 worth of stock in Johnson County Frozen Foods, Inc. This corporation was created in an effort to stimulate the industrial development of the Clarksville community through aiding the local peach industry, which had suffered serious reverses, and the commissioners were approached by a committee, heading the industrial drive, and requested to purchase the aforementioned amount of stock. After being advised by the commissioners that the purchase would have to be approved by the City Council, the committee returned and delivered to the commission a written authorization signed by the Mayor and all members

of the City Council, approving and authorizing the expenditures. The stock purchase was thereupon consummated and the stock was acquired as the property of the city. Appellants point out that the Arkansas Constitution, Article 12, Section 5, prohibits any county, city, town or other municipal corporation from becoming a stockholder in any company, association, or corporation, nor can money be appropriated to any corporation, association or institution. Appellants are correct in this contention, but it must be borne in mind that the relief sought under this point is not prospective; in such event, appellants would likely prevail. Rather, this is a suit to compel appellees to repay to the city of Clarksville, from their own personal resources, the $5,000.00 of utility earnings already expended by the commissioners in the purchase of stock. In *Hendrix* v. *Morris,* 134 Ark. 358, 203 S. W. 1008, the school directors purchased a school bus, though at that time (1918) school districts had no authority to buy school buses. Suit was instituted to obtain a judgment against the directors for the amount of the purchase. In holding that the school directors were not liable, this court said:

"In *Hendrix* v. *Morris,* 127 Ark. 222, 225, we held that the directors of this district and the treasurer had no authority to expend the money of the district for such purposes, but it does not follow that the directors are individually liable for the money thus expended. While it is alleged and admitted that the directors had no authority to issue the warrants for the purpose mentioned, there is no allegation that they acted willfully or maliciously. This is essential in order to make the directors personally liable. Where school directors act in good faith, believing at that time that they have authority under the statute to expend the money for the purposes for which they issue warrants, they will not be held individually liable to the district for moneys so expended, even though they have no such authority.

" 'The general rule,' says 35 Cyc. p. 910, 'is that the officers of a school district cannot be held personally liable on a contract made on their part as such officers

and solely for the benefits of the district, unless guilty of fraud and misrepresentation, or unless they expressly contract to assume personal liability.'

"As is said by the Supreme Court of Minnesota, 'Were the rule otherwise, few persons of responsibility would be found willing to serve the public in that large capacity of offices, which requires a sacrifice of time and perhaps money, but affords neither honor nor profit to the incumbent.'"

In the instant litigation, there is neither allegation nor proof that the directors acted willfully or maliciously. Unquestionably, the record discloses that they acted in good faith. They were of the opinion that they had the authority under the ordinance to expend the money for the purpose mentioned, and though this particular expenditure was not approved by ordinance, the same men who held the offices of Mayor and Councilmen respectively, in writing, approved this action of the commissioners. It would be manifestly unjust, and utterly foreign to equitable principles, to render a personal judgment against these commissioners who are not accused of fraud or sharp dealing, and apparently acted sincerely for the best interests of their home town. Appellees have undoubtedly spent considerable time in serving on the commission, without pay, and solely in the line of civic duty. In fact, to hold these men personally liable for the stock purchased would simply be to require an agent to repay to the principal a sum of money which the principal ordered the agent to spend.

It might also be mentioned that the abstract reveals no evidence to the effect that the company is insolvent or that it has been placed in bankruptcy, and accordingly there is no evidence to measure the damage which the city of Clarksville might have sustained because of the purchase of this stock. In the Arizona case of *Henderson* v. *McCormick*, 215 Pac. 2d 608, the Supreme Court stated:

"The authorities universally uphold the rule that a taxpayer may maintain an action only when such taxpayer and taxpayers as a class have sustained or will sustain pecuniary loss."

While appellants cite the constitutional provision prohibiting a city from becoming a stockholder in a company, they have not called upon the city to dispose of such stock.

In accordance with the reasoning herein set forth, we are of the view that the commissioners only acted as agents for the city, and no personal liability attaches.

— III —

The Clarksville Chamber of Commerce instituted a plan for a Dairy Expansion Fund for the purpose of promoting the Dairy Industry in the community, and the commission made a $1,000.00 investment in the fund, for which it received a certificate. The reasoning employed under the preceding discussion is likewise applicable here, though it is not clear that this item was specifically approved by the members of the Council. Here, again, no effort has been made to compel the city to dispose of or ''cash in'' the certificate received.

As heretofore stated, the Chancellor, in interpreting the ordinance, issued a directive relating to future operations of the commission. This directive was as follows:

''All surplus funds derived from the operation of such utility systems which may remain, after making the disbursements therefrom and establishing reserves as hereinabove authorized, shall be paid by defendants into the general treasury of the City of Clarksville; all funds thus paid into the general treasury to be subject to the exclusive control of the municipal council.

''It is the intent of this directive that defendants shall not apply any of the public utility revenues toward any charitable or quasi-charitable purposes or toward any program designed to promote the industrial development of the City of Clarksville.''

This action of the court was entirely proper and will result in future expenditures (not connected with the operation of the utilities) being made by the proper authority, the actual principal, *viz.*, the City of Clarksville, through its City Council. Of course, if the citizens

of that city desire to create a commission as set forth in the applicable legislative act,[5] Act 115 of 1957 [Ark. Stat. Ann. §§ 19-4061 through 19-4082 (Supp. 1961)], there is nothing to prevent such action.

Affirmed.

[5] Clarksville has now been a city of the first class for a number of years.