CHARLES P. McCARTY, JR., AND OTHERS
v. CITY OF ST. PAUL AND OTHERS.

155 N. W. (2d) 459.

December 29, 1967—Nos. 40,751, 40,876.

*Firestone, Fink, Krawetz, Miley & O'Neill* and *Cochrane, Thomson & Bresnahan,* for appellants.

*Lawrence J. Hayes* and *Maun, Hazel, Green, Hayes, Simon & Aretz,* for respondents Robert F. Peterson, George J. Vavoulis, Dean Meredith, Milton Rosen, Frank L. Loss, Bernard T. Holland, and United States Fidelity & Guaranty Company.

*Peterson & Popovich,* for respondents Frank D. Marzitelli and St. Paul Fire & Marine Insurance Company.

*Robert I. Lang, Robert L. Smith,* and *Feidt, Lang & Pauly,* for respondent Fidelity & Deposit Company of Maryland.

*John A. Daubney,* for respondents Joseph J. Mitchell and Elizabeth A. DeCourcy.

*Murnane, Murnane, Battis & deLambert,* for respondent Guaranty Security Insurance Company.

*Richard H. Kyle, Samuel L. Hanson,* and *Briggs & Morgan,* for respondent First National Bank of St. Paul.

SHERAN, JUSTICE.

Appeals from judgments of the district court.

The issue raised is whether the trial court properly granted summary judgment in favor of certain officials of the city of St. Paul and other defendants collaterally involved in a taxpayer's class action instituted by plaintiff in an effort to compel defendants to restore to the city moneys expended pursuant to the authorization of defendant officials, but without compliance with charter mandates relating to budget and appropriation procedures and tax levy limitations.

Reference to certain provisions of the St. Paul City Charter imposing limitations upon the taxing power of the city is necessary to analysis of the legal problem with which we are now concerned.

Section 201 of the charter specifies a maximum amount which may be expended in any fiscal year to meet the cost of city government. Subject to this limitation as to maximum amount, the council is em-

powered to levy an ad valorem tax on real and personal property in the city. Generally speaking, the money raised by the levy is assigned to funds in accordance with a budget adopted by the council after public hearings.

Section 201 also provides, "The Council shall have no authority to make appropriations, in excess of the limitations named herein." Section 205 provides in part:

"No department, bureau, activity, board or officer of said city shall have power or authority to expend any of the public moneys, or to incur any liability on behalf of the city in any fiscal year in excess of any fund or of any item of any fund fixed by the council except as hereinafter provided. Violation of this section shall be deemed malfeasance in office on the part of the person or persons violating it, and shall make such person personally liable to the other contracting parties for the excess for which said person has attempted to bind said city."

There is a state statute to like effect.[1]

These restrictions on the power of the council with respect to the adoption of a budget for city expenditures for any given year; the levy of taxes to raise the funds needed to defray the expenditures contemplated by the budget; and the appropriation of the funds so raised for any fiscal year are modified by other provisions of the charter, including §§ 206, 209, and 219.

---

[1] Minn. St. 275.27 provides: "It shall be unlawful for the authorities of any county, town, city, village, or school district, unless expressly authorized by law, to contract any debt or incur any pecuniary liability for the payment of either the principal or the interest of which, during the current or any subsequent year, it shall be necessary to levy a rate of taxes higher than the maximum prescribed by law. Every such contract shall be null and void in regard to any obligation thereby sought to be imposed upon such corporation; but every officer, agent, or member thereof who participates in or authorizes the making of such contract shall be individually liable for its performance. Every such officer or agent who is present when such contract is made or authorized shall be deemed to participate in or authorize the making thereof, as the case may be, unless he enter or cause to be entered his dissent therefrom in the records of such corporation."

Section 206 provides:

"In the event of * * * sudden and unexpected emergency wherein the funds appropriated * * * become inadequate properly to protect the public interests, the council by unanimous vote of all members thereof shall have power to authorize the mayor and comptroller, to borrow temporarily and upon such terms as the council may prescribe, such sum or sums of money as the council may, by unanimous vote of all the members determine to be necessary to meet such emergency * * *."

Repayment of such temporary loans is to be made by issuing bonds therefor or by a tax levy within one year from the date of such loan. Sums required for the repayment of these loans are apparently not considered to be a "cost of city government" within the meaning of the charter provision (§ 201) fixing a maximum dollar amount raisable by a tax levy in any given fiscal year.

Section 209 provides that all unencumbered balances remaining in budget funds at the end of a fiscal year shall be deducted from the budget appropriations for the next year for the funds in which such balances appear, before these funds are provided for by tax levy.

Section 219 provides that the proceeds of the sale of any city property not appropriated within a year for the purchase of other property for public use should be assigned to a sinking fund to be used for the payment and retirement of bonded indebtedness of the city.

Plaintiff's complaint charged that the city officials named as defendants authorized and permitted improper expenditures to meet the cost of city government and departments other than schools and evaded the charter mandates with respect to the formulation of budgets for and appropriation of city funds in permitting or authorizing three practices violative of the charter:

(1) Failing to budget and appropriate for the cost of snow removal (except in a nominal amount) and then meeting the recurring expense for this municipal service through loans on the untenable theory that snowfall is a "sudden and unexpected emergency" within the meaning of § 206 of the charter;

(2) Failing to reappropriate unencumbered balances in specific funds at the end of a given fiscal year against the budget appropriations for such funds in the following year, thus making larger tax levies necessary;

(3) Failing to assign the proceeds of the sale of city property to a sinking fund to be used for the payment and retirement of bonded indebtedness, thereby, to the extent that such proceeds were used to defray the annual cost of city government, evading the amount specified in the charter as the maximum to be raised by taxes and expended for that purpose in any given fiscal year.

Plaintiff alleges that the appropriating and tax-levying authorities of the city of St. Paul had been forewarned for many years by opinions of the corporation counsel and the attorney general that in Minnesota, at least, snowfall cannot be considered a sudden and unexpected emergency.[2] Plaintiff urges that the purpose and effect of the variances from prescribed procedure was to give a form of authority for expenditures which have resulted in excessive tax levies and to permit contraction of debts which were null and void under provisions of the charter and state statutes.

As noted, the object of this action was to compel defendants to reimburse the city for the funds alleged to have been illegally expended.

An earlier lawsuit commenced in 1965 and instituted by Charles P. McCarty, Jr., the present plaintiff, against the city of St. Paul, its mayor, and the city comptroller, resulted in an order of the District Court of Ramsey County restraining the city from the practice of meeting the annual cost of snow removal by temporary loans made pursuant to the emergency powers embraced in § 206. Judgment to this effect was entered February 10, 1966, with the operative effect of the in-

---

[2] The defendants denied that the opinions specified by the plaintiff give a warning that such conduct was illegal, and alleged that they acted at all times in good faith. Because this is an appeal from a summary judgment, it will be assumed for the purposes of this appeal that the opinions of the corporation counsel and the attorney general were sufficient to give the defendants a warning.

junction deferred until the following year. Although an appeal was taken from this judgment by the city on March 10, 1966, it was dismissed on November 8 of that year and became, as to the city, a binding adjudication that the cost of removing snowfall reasonably to be anticipated in any given year cannot be financed by temporary loans.

The alleged failure of the city to credit unencumbered balances remaining in budgeted funds at the end of each fiscal year against the budget appropriations for such funds for the following year and the alleged failure of the city to assign the proceeds of the sale of city property to the bond-retirement sinking fund were not involved in that litigation.

We treat the present action as having been commenced on December 14, 1966, the date on which it was authorized by order of the district court. This being the case, the statute of limitations becomes applicable. Even so, the question occurs as to whether recovery of the sums expended during the period not barred by this statute can be allowed.

■ The trial judge, in granting defendants' motion for a summary judgment, reasoned that—

"* * * municipal officials * * * are not liable in response to a taxpayer's suit for expenditures of public money for public purposes, even though the expenditures may have been such as were not permitted by law, if a municipality has received value for the money expended and the official did not receive personal profit. It is not contended here or claimed in the complaint that any of the money which it is claimed was illegally appropriated and spent, was spent for anything other than proper, legitimate municipal purposes, and no one claims that the city has suffered any financial loss by reason of the actions complained of.

\* \* \* \* \*

"* * * A taxpayer's remedy in such cases is by timely application for injunctive relief or by the ballot."

We agree.

The Minnesota decisions cited by plaintiff stand for these propositions:

(1) The improper expenditure of municipal funds may be enjoined in a taxpayer's suit.[3]

(2) Contracts with a municipality not performed by it are not enforceable when the obligation of the city to pay cannot be discharged without resort to funds improperly raised or appropriated.[4]

(3) Municipal officials who authorize the expenditure of municipal funds for purposes clearly beyond the powers of the municipal corporation and persons who receive such funds can be compelled, in some situations at least, to restore to the municipality the amount thus diverted.[5]

But these rules do not apply to the case at hand. The right of the plaintiff to enjoin improper methods of raising funds for public purposes was recognized and vindicated in the suit brought by plaintiff for that purpose which resulted in the entry of the injunctive judgment in his favor on February 10, 1966. If the case were one where the expenditure of public funds was for *purposes* which exceeded the authority of the city, recoupment might be gained from public officials who acted with actual or constructive knowledge of their lack of authority and

---

[3] In Burns v. Essling, 156 Minn. 171, 194 N. W. 404, the court granted an injunction preventing the city from expending the city's money for non-municipal purposes.

In Sommers v. City of St. Paul, 183 Minn. 545, 237 N.W. 427, the court enjoined the city from appropriating money beyond the limitation placed upon the cost of government of the city by its charter.

In Upton v. Strommer, 101 Minn. 97, 111 N. W. 956, the court refused to enjoin the county from carrying out certain contracts which it had made because the indebtedness the contracts created would not be illegal.

[4] In Johnston v. County of Becker, 27 Minn. 64, 6 N. W. 411, the county contracted with the plaintiff to build a jail. The cost of the jail was beyond the amount the county was legally able to spend. The court therefore held the contract void.

[5] In Burns v. Essling, 154 Minn. 304, 191 N. W. 899, the court overruled a demurrer to a complaint seeking to compel certain city officials to restore city funds which had been expended for nonmunicipal purposes from which the city received no benefit. The money had been spent for the promotion of athletic clubs playing in the city and the maintenance of the players on these teams.

from those who received the funds improperly expended. But in this case it is clear that the *purposes* for which the sums involved were expended were essential and authorized. If the city officials involved had defied binding judicial orders or determinations and expended funds improperly raised, even though for authorized purposes, we would be disposed to allow recovery at the instance of an interested taxpayer. But until the decision of the District Court of Ramsey County in the injunction action was made and the appeal from the judgment was dismissed, there was no such final judicial interpretation of these charter provisions as would bring us to that state of things. The opinions brought to the attention of the city authorities were not unequivocal or final determinations of the question and did not charge certain knowledge to the city officials that the longstanding fiscal practices involved were illegal. If there had been an attempt on the part of the officials of the city of St. Paul during the period in question to conceal their methods of operation so as to prevent or delay injunction proceedings, recovery could be urged on the theory that such conduct prevented timely resort to other remedies. But the practices to which plaintiff now takes exception were readily ascertainable, if not notorious. If it were to be established (however proper the purposes of the expenditures and however well-known the method of raising the funds) that the city suffered a specific loss because of improper financing procedures, recovery of the amount of such loss might be allowable as against any city official responsible for it. But the record fails to disclose any assertion that such specific loss was incurred.

Although we affirm the decision of the trial court, we feel it necessary to caution those charged with the management of municipal affairs that failure to observe charter limitations involving the budget, appropriation, and taxing functions, may expose them to personal liabilities of a serious character—a hazard which can be avoided in questionable situations by securing a prompt judicial determination of doubts concerning the legality of one fiscal procedure or another.

■ Our disposition of the claim against the city officials resolves the claim against their sureties, who have no liability beyond that of their principals. The liability orbit of the defendant bank, which made the

emergency loans—which have been repaid—at rates of interest admittedly reasonable, is even more restricted than that of the municipal officials who requested and secured these loans. Where a bank has loaned money to a municipality at fair, competitive interest rates, the loan has been repaid by the municipality, and the money borrowed by the city was used for proper purposes from which the bank received no unlawful benefits, the bank cannot be compelled to repay the interest it has earned to the municipality which has already received the benefit of the loan. See, First Nat. Bank v. Village of Goodhue, 120 Minn. 362, 139 N. W. 599, 43 L. R. A. (N. S.) 84.

Affirmed.