ELVIEW CONSTRUCTION CO., INC.; Master Builders of Iowa, Inc.; Richard A. Hampe; and Quad City Builders Association, Appellants,

v.

NORTH SCOTT COMMUNITY SCHOOL DISTRICT; Dean Bassett, James Bell, Rex Masterson, Jane Miles, Robert Medd, Ned Mohr and James Tank, as the Board of Directors of the North Scott Community School District, Eldridge, Iowa; Arno (Barney) Ewoldt; and Gary Ewoldt Construction, Inc., Appellees.

No. 84–1776.

Supreme Court of Iowa.

Aug. 21, 1985.

Albert L. Harvey and Robert C. Rouwenhorst of Davis, Grace, Harvey, Horvath, Gonnerman & Rouwenhorst, Des Moines, for appellants.

Kenneth L. Keith and Joni L. Keith of Dull, Keith & Beaver, Ottumwa, and Donald H. Sitz of Lane & Waterman, Davenport, for appellees School Dist. and Bd.

Jack D. Darland and John T. Flynn of Wells, Brubaker, de Silva, Flynn & Darland, P.C., Davenport, for appellees Ewoldts.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McGIVERIN, and SCHULTZ, JJ.

McGIVERIN, Justice.

Plaintiffs Elview Construction Co., Inc., (Elview) and its principal owner, Richard A. Hampe, and other plaintiffs appeal from a district court ruling which, after trial, dismissed their petition in equity. The case involves several questions concerning the award of construction and material contracts on a public improvement by defendant North Scott Community School District and its board of directors. Defendant Arno (Barney) Ewoldt was the supervisor of the construction project and defendant Gary Ewoldt Construction, Inc., was a contractor of a portion of the work. After consideration of the issues presented, we affirm.

This case arose in April 1983 when the North Scott Community School District decided to build an addition to an existing school. Pursuant to Iowa Code section 23.2 (1983), dealing with public improvement contracts, the board adopted proposed plans and contract forms and set a time for a public hearing on the matter. Notice of the hearing was given by publication. There were no objections to the proposed project raised at this hearing held on April 26, 1983. *See* Iowa Code § 23.3.

The board decided to split the project into individual contracts, according to the type of work to be done. There were twenty-six contracts making up the general project or improvement. Bids were solicited for a general contract for the entire project and in the alternative for each of the twenty-six individual contracts. After the bids were in, the board decided it would be most economical to accept the bids on the individual contracts, according to the lowest bidder on each one, rather than accepting one general contract bid for the project as a whole. Defendant Arno Ewoldt was hired as a construction manager to supervise the project and to keep the job flowing in a smooth manner.

There were no bids received on seven of the twenty-six individual contracts so the board informally solicited price quotations for those contracts and awarded purchase orders on them after the normal bidding process had been completed. On another contract known as "J" for metal doors and frames for the building, Elview had the only bid, but it was rejected because the price was too high. That contract then was informally split by the school board into separate parts and each portion was awarded to the company which had submitted the lowest quotation for the material and work. Defendant Gary Ewoldt Construction, Inc., did carpentry work on a portion of the project. These are the contracts at issue here.

This equity action was brought by Richard Hampe, a taxpayer, Elview, which had unsuccessfully submitted a bid on the general contract and on several of the individual contracts, the Master Builders of Iowa, Inc., and the Quad City Builders Association. Plaintiffs contended that the school board's actions violated the competitive bidding statutes. Plaintiffs say the board should have requested new bids and given notice and opportunity for hearing to the public as provided by Iowa Code sections 23.18 and 23.2. Because of those alleged violations, plaintiffs argue that the contracts formed as a result of the school board's illegal actions are void. In addition, plaintiffs argue that the contracts were void because performance bonds were not provided to the school district by some of the contractors.

The school addition project was completed by October 1983. All money has been paid for the materials and labor. There have been no complaints about the project.

Plaintiffs' equity suit was filed on September 6, 1983, challenging the contracts as being void. After trial, the district court ruled that neither Master Builders of Iowa, Inc., nor Quad City Builders Association had standing to raise this cause of action. Although those plaintiffs joined in the notice of appeal, they have made no claim and stated no authority for relief

from the court's ruling as to them in appellants' brief. Therefore, we dismiss the appeal as to plaintiffs Master Builders of Iowa, Inc., and Quad City Builders Association. *Cf.* Iowa R.App.P. 14(a)(3).

The district court found that Elview, as an unsuccessful bidder, lacked standing to bring the action and that neither Elview nor Hampe had followed the appropriate method for administrative appeal to the state appeal board concerning the questioned contracts as provided in Iowa Code chapter 23 nor had they sought certiorari relief. *See* Iowa R.Civ.P. 306–19. Finally, the court concluded that the case was moot because the questioned contracts have been performed to the satisfaction of the contracting parties. Accordingly, the action was dismissed.

This appeal by plaintiffs followed, assigning numerous errors. However, under the view we take of this case, we find it unnecessary to address all of them. The controlling issues raised by plaintiffs Elview and Hampe which we address are: 1) whether plaintiff Elview, an unsuccessful bidder on the project, lacked standing to maintain this action; 2) whether contracts made in violation of Iowa Code chapter 573, requiring performance bonds to be placed on public improvements, are void; and 3) the relief available to plaintiffs concerning allegedly void contracts that have been satisfactorily completed and on which all sums due have been paid to the contractors by the school board.

The scope of our review is de novo. Iowa R.App.P. 4.

I. *Standing of the parties.* The court dismissed the case as to Elview Construction on the basis of lack of standing to bring the petition in equity. In its amended petition, Elview challenged the alleged bidding irregularities, the alleged bonding irregularities and the division of the contract for the school addition into twenty-six parts. Elview asserts its standing by virtue of its role as an unsuccessful bidder on the entire project and on one individual contract, and as a taxpayer.

In order to have standing, a plaintiff must allege a sufficient personal stake in the outcome of a controversy to insure that the dispute is presented in a concrete adversary context. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 678 (1962); *Iowa Civil Liberties Union v. Critelli,* 244 N.W.2d 564, 567 (Iowa 1976).

The general rule governing a challenge to bidding procedures is that an unsuccessful bidder lacks standing to bring a suit challenging their legality. 64 Am. Jur.2d *Public Works and Contracts* § 86 (1972). In *Perkens v. Lukens Steel Co.,* 310 U.S. 113, 127, 60 S.Ct. 869, 876, 84 L.Ed. 1108, 1115 (1940), the Supreme Court, when referring to the Public Contracts Act, 41 U.S.C. § 35 (1938), stated:

That Act does not depart from but instead embodies the traditional principle of leaving purchases necessary to the operation of our Government to administration by the executive branch of Government, with adequate range of discretion free from vexatious and dilatory restraints at the suits of prospective or potential sellers. It was not intended to be a bestowal of litigable rights upon those desirous of selling to the government....

Iowa law is in accord with this general rule. *Mortland v. Poweshiek County,* 156 Iowa 720, 723, 137 N.W. 1009, 1010 (1912); *Dickinson v. City of Des Moines,* 347 N.W.2d 436, 440–41 (Iowa Ct.App.1984).

Further, as this court, in *Istari Construction, Inc. v. City of Muscatine,* 330 N.W.2d 798, 800 (Iowa 1983), pointed out, the purpose of competitive bidding statutes is to protect the public "to secure by competition among bidders, the best results at the lowest price, and to forestall fraud, favoritism and corruption in the making of contracts." Such statutes were enacted for the benefit of the taxpayers, not the bidders.

For these reasons, we conclude that Elview lacked standing as an unsuccessful bidder to bring this action.

Plaintiffs Richard Hampe and Elview also seek to challenge the school board's actions because of their status as taxpayers of the district. Substantial evidence indicates they are such taxpayers. Iowa law grants standing to a taxpayer to test the legality of a contract made by a school district. *Poor v. Incorporated Town of Duncombe*, 231 Iowa 907, 911, 2 N.W.2d 294, 297 (1942). Therefore, we must consider their claims in view of the rights and remedies accorded a taxpayer of the school district under Iowa law.

II. *Effect of the lack of performance bonds.* Plaintiffs argue that, because performance bonds required by Iowa Code sections 573.2 and 573.3 (1983) for the work were not posted by contractors on some of the contracts, those questioned contracts are void. No cases are cited to support this proposition. Plaintiffs' basic argument seems to be, "What if something had gone wrong with the project?" It certainly was wrong for the board not to obtain performance bonds on each of the contracts; the board took an unnecessary risk. If the contractors had defaulted on performance or defects appeared in the work, the school board, as the representatives of the district taxpayers, would be in a precarious, and difficult to justify, position. However, there is no evidence that actual harm occurred as a result of this deficiency. Imagined risks cannot serve as the basis of a claim.

Further, the record indicates that all the money has been paid on the contract prices and that no claims regarding the project have been filed. The district court observed that if a bond had been placed on each of the contracts, it would have been returned by time of trial. Therefore, this issue is moot. An issue is moot when a judgment, if rendered, would have no practical legal effect upon the existing controversy. *Toomer v. Iowa Department of Job Service*, 340 N.W.2d 594, 598 (Iowa 1983).

III. *Remedies on the contracts.* Plaintiffs' main contention is that the seven contracts for the school addition, which did not receive any bids, plus contract J, which received a bid that was rejected by the board, were let in violation of Iowa Code section 23.18 which governs the competitive bidding process for public improvements. Iowa Code section 23.18 provides in part:

> When the estimated cost of construction, erection, demolition, alteration or repair of a public improvement exceeds twenty-five thousand dollars, the municipality shall advertise for bids on the public improvement by two publications in a newspaper published in the county in which the work is to be done.... The municipality shall let the work to the lowest responsible bidder submitting a sealed proposal. However, if in the judgment of the municipality bids received are not acceptable, all bids may be rejected and new bids requested....

This statute is not absolute; it applies only when the estimated cost of construction exceeds twenty-five thousand dollars. The requirement cannot be circumvented by dividing a public improvement which is in reality one project into several projects to avoid the statutory requirements. If this practice were sanctioned, "[e]ven the most complex project could be broken down into contractual components small enough to avoid the bidding requirement." *Kunkle Water and Electric, Inc. v. City of Prescott*, 347 N.W.2d 648, 655 (Iowa 1984).

Therefore, all twenty-six of the contracts for the school addition were subject to the guidelines of section 23.18 because each was a part of one public improvement costing in excess of the twenty-five thousand dollar limit. This does *not* mean that "contract splitting" is an illegal practice. It simply means that the school board had to observe the statutory formalities when it let each of the contracts, although some were for less than the twenty-five thousand dollar limit.

If the board deviated from the statutorily prescribed competitive bidding system and the deviations were severe enough to deprive the board of its jurisdic-

tion to act, then the resulting contracts were void. If the board's actions are characterized as mere "irregularities," then the contracts are voidable.

A procedural question may arise, depending on whether a contract is "voidable" or "void." If the contracts were "voidable," then plaintiffs first had to utilize the administrative appeals process to the state appeal board provided in Iowa Code sections 23.3–.7 before bringing an equity action in district court to set aside the contracts. *Husson v. City of Oskaloosa*, 240 Iowa 681, 687, 37 N.W.2d 310, 314 (1949). If the contracts were "void," however, plaintiffs could properly bring an equity action without first exhausting the administrative remedy. *Id.* at 687, 37 N.W.2d at 314.

The facts of each case must be examined to determine whether the deviation from the prescribed system of competitive bidding was great enough to cause the contracting board to lose its power to act and make the contract void.

The following authorities illustrate the problem. On the one extreme, when there has been no attempt to comply with the competitive bidding statute, this court has characterized the resulting contracts as "void." *Kunkle Water and Electric, Inc.*, 347 N.W.2d at 655; *Everds Brothers v. Gillespie*, 256 Iowa 317, 320–21, 126 N.W.2d 274, 277 (1964); *Horrabin Paving Co. v. City of Creston*, 221 Iowa 1237, 1243, 262 N.W. 480, 486 (1935). However, when there has been substantial compliance with the competitive bidding statute, minor procedural defects do not cause a jurisdictional defect rendering the contract void, rather the deviations are characterized as "irregularities" which make the contract voidable. *Johnson v. Incorporated Town of Remsen*, 215 Iowa 1033, 1039, 247 N.W. 552, 554 (1933) (opening bids before objections to the project were overruled); *Koontz v. City of Centerville*, 161 Iowa 627, 630, 143 N.W. 490, 491 (1913) (improper notice of date for consideration of bids). Thus, a court ordinarily must determine if there was substantial compli-

ance with the statute, and then rule upon the status of the resulting contract.

However, we find it unnecessary to determine whether the contracts at issue are "void" or "voidable," and whether plaintiffs first had to pursue an administrative appeal path under Iowa Code sections 23.-3–.7, because regardless of the ultimate status of the contracts, plaintiffs here are without a remedy. If we assume, *arguendo*, that all or at least some of the questioned contracts are "void," we then must consider the relief available to plaintiffs. Plaintiffs argue that when a void contract has been fully performed by both sides, recovery back from the defendant contractors and the members of the school board should be ordered because the monies were paid illegally. Their position, however, is without support in Iowa case law.

A. *As to the contractors.* This court has faced the situation where a municipality has had the benefits from an illegal contract, but the contractor has not yet been paid, and held a contractor may not recover any unpaid claims once a public contract is declared void. *Kunkle*, 347 N.W.2d at 657; *Thompson v. L.J. Voldahl*, 188 N.W.2d 377, 380 (Iowa 1971); *Everds Brothers*, 256 Iowa at 322, 126 N.W.2d at 277–78.

A contrary result is reached, however, if the taxpayer is seeking the recovery of sums that a contractor has already been paid. In *Miller v. City of Des Moines*, 143 Iowa 409, 122 N.W. 226 (1909), we declared a contract void because the city council had violated the competitive bidding statute, although there was no allegation of fraud or wrongdoing. Repayment by the contractor was not ordered because:

> [T]he work has been done; it has been accepted by the city; it is of a character which can not be returned to the contractors and thus place them in [*status*] *quo*; it is work which if not done by this contractor would have to be done by some other person; the prices charged are not shown to be unreasonable; the invalidity of the contract is not chargeable to any wrong or omission on the part

of the contractor, but solely to the act of the city through its council.

*Id.* at 425, 122 N.W. at 232.

In *Kagy v. Independent School District of West Des Moines,* 117 Iowa 694, 89 N.W. 972 (1902), a school board had entered into contracts in which various members of the board had an interest. We held that plaintiff taxpayer could not maintain his action to recover the money paid to the contractor from the board and various contractors. The work was complete, and we stated:

> There is nothing morally wrong or inequitable in saying to a school district that it must pay a fair consideration for benefits received, before it will be permitted to repudiate an executed contract by virtue of which it has obtained, and continues to hold, something of substantial value.

*Id.* at 699, 89 N.W. at 973.

In one case, cited previously, *Thompson v. L.J. Voldahl,* 188 N.W.2d at 381, recovery back from contractors was allowed from void contracts. The holdings in *Miller* and *Kagy* were distinguished because both of those cases involved general assessment taxpayers and the plaintiffs in *Thompson* were special assessment taxpayers.

In *Thompson,* we noted that in the general taxpayer situation money returned by a contractor would go back into the "general fund for general use after the taxing body has had the benefit of defendant's efforts." *Id.* at 381. However, when a contractor paid back the amounts he received for work done in a special assessment case, the money would be returned only to those taxpayers who paid into the special assessment fund. We summarized this distinction between general and special assessment taxpayers as follows:

> Stated otherwise, the taxpayers in the *Kagy* and *Miller* cases could only benefit indirectly and minimumly as general taxpayers by adding the recovered money to the general coffers. (Footnote omitted.)

*Id.* at 381.

▇ The evidence in the present case shows that plaintiffs are general taxpay-

ers. Therefore the *Miller* and *Kagy* holdings apply and the contractors need not repay sums already received, assuming no fraud or bad faith is involved.

Although there are some persuasive arguments in favor of allowing recovery back from contractors even in general assessment taxpayer cases, as well as disallowing further payments, our cases have made the distinction between paid and unpaid claims and we believe this is the more equitable result, absent a showing of fraud or that unreasonable sums were paid. There are no such contentions or showings made here. Other jurisdictions are in accord with this rule. *Gamewell Co. v. City of Phoenix,* 216 F.2d 928, 941 (9th Cir.1954), *modified* 219 F.2d 180 (1955); *State v. Fourth National Bank,* 270 Ala. 135, 117 So.2d 145, 154–55 (1959); *Village of Pillager v. Hewitt,* 98 Minn. 265, 107 N.W. 815, 816 (1906); *Burns v. City of Nashville,* 142 Tenn. 541, 221 S.W. 828, 842–43 (1920); *Ellefson v. Smith,* 182 Wis. 398, 196 N.W. 834, 835 (1924); *Tobin v. Town Council of Sundance,* 45 Wyo. 219, 17 P.2d 666, 674 (1933).

▇ We conclude that recovery from a contractor is not allowed under the facts present here when a contractor has performed under a contract which is later declared invalid. The contractor may keep the amount it has been paid but not receive any more. We leave the parties as we found them. By allowing the recovery back of payments made to a contractor, the court is asked to take affirmative action and through the court's action, one party, the school district, would be allowed to receive both the benefits of performance and the money. *Gamewell Co.,* 216 F.2d at 941. We will not order such a windfall here.

While it may be that defendant Gary Ewoldt Construction, Inc., could not have maintained an action to recover the contract price for its portion of the work on the school addition, although it had fully performed the contract, plaintiffs may not require the contractor to pay money it re-

ceived for contract J back to the school district. We note that the contractors on the other questioned contracts are not parties to this case.

B. *As to the school board members.* Plaintiffs also maintain that the school board members should be ordered to pay to the district the amounts which were unlawfully disbursed on the allegedly void contracts.

In support of their claim for recovery from the school board members, plaintiffs cite 4 E. McQuillan, *Municipal Corporations,* section 12.217 at 181 (3rd ed. 1979), which provides that a public officer may be personally liable for payments made under illegal contracts. This treatise cites case law from other jurisdictions to support this proposition. *See In re Borough of Rankin,* 347 Pa. 40, 31 A.2d 543, 546 (1943) (recovery against borough council members for illegal expenditures made to chief of police); *Coyle v. Richter,* 203 Wis. 590, 234 N.W. 906, 907 (1931) (recovery from officials of money illegally paid under contracts let without submission to competitive bidding).

However, McQuillan goes on to state:

In spite of the foregoing, it has also been said that the liability of an officer for money paid out on fraudulent claims or unlawful contracts is based alone on the officer's knowledge thereof. In other words, the officer is not liable for disbursements made in good faith.

4 E. McQuillan, *supra,* § 12.217 at 232.

There is ample authority cited to support this alternative position. *See Adams v. Bryant,* 236 Ark. 859, 370 S.W.2d 432, 436–37 (1963) (no personal liability against water commissioners who disbursed money on void contracts, absent fraud); *LaFleur v. Roberts,* 157 So.2d 340, 346 (La.Ct.App. 1963) (no personal liability against mayor for sums paid to official invalidly appointed); *Board of Education of Oklahoma City v. Cloudman,* 185 Okl. 400, 92 P.2d 837, 840 (1939) (no personal liability for school board members charged with issuing illegal warrants).

Our cases are in accord with this latter view and indicate that a public officer, such as a school board member, cannot be held responsible for damages on account of any act done by him in his official capacity in the absence of fraud, bad faith or personal profit. In *Lough v. City of Estherville,* 122 Iowa 479, 485, 98 N.W. 308, 310 (1904), we stated:

His act may be void as in excess of jurisdiction, or otherwise without authority of law, and he may be subject to impeachment and removal from office for corrupt practice, but he cannot be mulcted in damages. This conclusion has the support of all the adjudged cases.

This rule was modified in *Lehan v. Greigg,* 257 Iowa 823, 832–33, 135 N.W.2d 80, 86 (1965), where we adopted a good faith qualification to the general rule. If an officer acts in bad faith or knowingly exceeds his authority, he may be held personally liable for damages. Other jurisdictions, not cited in McQuillan, are in accord with Iowa law and state that in the absence of bad faith or personal profit, there is no liability on public officers. *Town of Gila Bend v. Walled Lake Door Co.,* 107 Ariz. 545, 490 P.2d 551, 558 (1971); *City of Hawkinsville v. Wilson and Wilson, Inc.,* 231 Ga. 110, 200 S.E.2d 262, 264 (1973); *McCarty v. City of St. Paul,* 279 Minn. 62, 155 N.W.2d 459, 463–64 (1967).

Here there were no allegations or showing of bad faith, self-dealing or fraud on the part of the school board members. Therefore, we conclude that plaintiffs Elview and Hampe may not recover on behalf of the school district from the board members the money paid on the allegedly void contracts.

By the result reached in this case we do not condone the actions of the defendant school board in its handling of contract J without readvertising for public bids pursuant to Iowa Code section 23.18, after rejecting Elview's bid, and in its failure to require performance bonds on all contracts awarded.

After consideration of all contentions made by plaintiffs, we affirm the trial court's dismissal of the petition in equity.

AFFIRMED.