The Honorable Junaway Payne, Chairman Poinsett County Election Commission P.O. Box 710 Lepanto, Arkansas, 72354
Dear Mr. Payne:
This is in response to your request for an opinion concerning the popular election of municipal public utility board members. Specifically, you note that the City of Lepanto is currently a first class city and was originally established in 1939 as an incorporated town. The City's utility board was founded pursuant to Act 95 of 1939, (when the City was an incorporated town) with five elected board members serving five year terms. Board members have been popularly elected since that time. At some point, the City became an city of the first class, although it is not indicated when this occurred.[1] You state that a question has arisen concerning whether it is legal to continue to popularly elect the members of this Board, presumably in light of the fact that more recent legislation applicable to the creation of such boards in first class cities provides for appointed rather than elected board members.
It is my opinion that the City may continue to popularly elect these board members under the present ordinance, or it may choose to revise or amend the ordinance to require appointed board members, at its option. The caselaw of the Arkansas Supreme Court on this point reflects that the issue is discretionary with the city, and that strict compliance with the applicable subchapters is not required.
Some explanation is necessary. There are at least three separate subchapters in the Arkansas Code governing the creation of such municipal utilities boards. See A.C.A. §§ 14-200-101 to -129 (Acts 1957, No. 115, applicable to first class cities); A.C.A. §§ 14-200-201 to -208 (Acts 1953, No. 562, applicable to first class cities with boards created prior to 1957); and A.C.A. §§ 14-200-301 to -330 (Acts 1939, No. 95, applicable to second class cities and towns). As you have noted, the City of Lepanto's board was created under the last-cited subchapter, when that City was an incorporated town. See Portis v. Board of Public Utilities,Lepanto, and Lepanto v. Goldsby, 213 Ark. 201, 209 S.W.2d 864 (1948). The City's adopting ordinance (which I have not reviewed), presumably is in accordance with the provisions of that subchapter, which calls for the popular election of board members.
At some point in time, however, Lepanto became a first class city.[2]
Act 115 of 1957, which applies to first class cities, provides for the appointment, rather than the election of board members. See A.C.A. §14-201-105(b). It also has a provision, however, which states that: "The provisions of this subchapter shall not apply to any commission, agency, or board created otherwise than pursuant to this subchapter by any city of the first class for the purpose of operating and managing the city's waterworks or electric system." A.C.A. § 14-200-103. The subchapter also excludes from its operation several other types of commissions created under other laws. See A.C.A. § 14-200-101. The subchapter does not expressly address its applicability to cities creating such boards when they were classified as either cities of the second class or incorporated towns, but which later become cities of the first class.
It is my opinion from a reading of these provisions as a whole, however, that compliance with A.C.A. § 14-200-101 to -129 is not mandatory for such a city. Support for this conclusion can be found in caselaw of the Arkansas Supreme Court. In Adams v. Bryant, 236 Ark. 859, 370 S.W.2d 432
(1963), at issue was the City of Clarksville's creation of a "Light and Water Commission" in 1949, at a time when that City was a city of the second class. A taxpayers' suit was instituted challenging the validity of the Commission, and it was alleged that its creation did not conform to the requirements of Act 95 of 1939. (The City of Clarksville had chosen to have three rather than five board members, and to have them appointed, rather than elected, as Act 95 required). The court held that the City did not have to strictly conform to the requirements of Act 95, noting that the Commission was an agency of the City, and that the City Council may designate agents to act on behalf of the City. This holding was reaffirmed in Cosgrove v. City of West Memphis, 327 Ark. 324,938 S.W.2d 827 (1997), which held that a public utilities commission may be created in accordance with statutory dictates, but, alternatively, a commission to operate the utilities may also be established as an agency of the city, and that regardless of whether it is a city of the first or second class, it need not create a commission in accordance with legislative requirements, as long as it remains an agency of the city.
More importantly for present purposes, however, is a statement in Adamsv. Bryant, supra, which recognizes the fact that the Clarksville Commission was created in 1949, at a time when it was a city of the second class, but which at some later point became a city of the first class. The court, after noting that statutory requirements need not be strictly complied with, stated that: "Of course, if the citizens of that city desire to create a commission as set forth in the applicable legislative act, Act 115 of 1957 [now A.C.A. § 14-200-101- to 129] there is nothing to prevent such action." The court stated in a footnote to this sentence that "Clarksville has now been a city of the first class for a number of years." 236 Ark. at 868, n. 5. The Adams court obviously did not deem compliance with Act 115 of 1957 mandatory for a city which had created a utility commission under other authority, when it was a lesser classification of city.
It is therefore my opinion that the City of Lepanto is not statutorily required to have a utilities commission with appointed rather than elected board members under Act 115 of 1957. It may, in my opinion, continue to lawfully elect board members under its existing ordinance, unless and until it chooses to change the ordinance to appoint board members pursuant to Act 115 of 1957, or some general authority of city government.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] It is my understanding, however, that this occurred in 1974.
[2] Again, it is my understanding that this occurred in 1974.