Osier v. Burlington Telecom, No. S1588-09 CnC (Toor, J., Oct. 20, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
CHITTENDEN UNIT
CIVIL DIVISION

| | |
|---|---|
| FRED OSIER, et al.,<br> Plaintiffs<br><br> v.<br><br>BURLINGTON TELECOM, et al.,<br> Defendants | Docket No. S1588-09 CnC |

RULING ON MOTION FOR INTERLOCUTORY APPEAL

The court previously denied a motion to dismiss filed by Defendant Leopold, finding that he was not entitled to qualified immunity. He now seeks permission to file an interlocutory appeal on that issue. To some extent he also reargues the court's prior ruling, in essence arguing that instead of the usual doctrine of qualified immunity – which he himself asserted as a defense in this case – there is a different kind of immunity, or some special definition for qualified immunity, in this sort of case.

Analysis

In federal court, there is generally an automatic right to appeal a denial of qualified immunity. Mitchell v. Forsyth, 472 U.S. 511, 527-30 (1985). This is consistent with the idea that immunity is a protection from suit, not just from liability. Id. at 526; Murray v. White, 155 Vt. 621, 626 (1991). The idea, of course, is that "[i] t is not in the public interest to expose state employees to the distraction and expense of such litigation." Levinsky v. Diamond, 151 Vt. 178, 199 (1989), *overruled on other grounds*, Muzzy v. State, 155 Vt. 279, 280 fn * (1990).

In Vermont, however, our Supreme Court has made clear that there is no automatic right to interlocutory appeal from the denial of qualified immunity. In re J.G.,

160 Vt. 250, 253 (1993)("Our jurisdictional scheme for appeals is different from that applicable to the federal courts"). Although the Court has acknowledged that such rulings meet the threshold requirements for collateral appeals, the decision regarding an interlocutory appeal in this situation is still a discretionary one. Murray, 155 Vt. at 627 (such appeals meet the three threshold requirements); Lamb v. Bloom, 159 Vt. 633, 634 (1993) ("there is no entitlement to appeal even if the three prerequisites for collateral order jurisdiction are met"); In re J.G., 160 Vt. at 253-54 (the appellate rules "clearly give both the trial court and this court the discretion to deny collateral order appeals," even when the threshold criteria are met).

The Court has noted that "there are strong and weak claims of immunity," and not all deserve to engender the delay that such appeals inevitably create. Lamb, 159 Vt. at 634. While it could be argued that a trial judge is unlikely to ever say that she denied immunity when the claim for it was strong, there are actually a broad range of situations in which trial courts evaluate the clarity of the law on which their decisions are based. There are times when the law seems clear, and the result hardly disputable.[1] There are other times when the case is close, and a ruling either way would be reasonable. It is in those situations that an interlocutory appeal makes sense.

Leopold argues that he "will testify that he was not aware of Condition 60 specifically until the first week of November of 2008…" Motion at 2-3. That may well be his testimony, and it might be relevant on summary judgment or at trial, but it is not before the court on a motion to dismiss. All the court evaluates at this juncture is the complaint and attachments thereto. The issue at this stage is whether, if what plaintiffs

[1] For example, if a law enforcement officer were to argue that she had qualified immunity for taking the media along on the execution of a search warrant after the United States Supreme Court had created clearly established law that such actions are Fourth Amendment violations, there would be little point to an appeal because the denial of immunity would be so clear.

2

say is proved at trial, Leopold would have immunity. Whether Leopold knew of Condition 60 may well go to whether he can be held liable on the claim for failure to comply with it. It does not, however, go to whether he has qualified immunity if he knowingly violated the condition – the claim asserted against him in the complaint. Sec. Am. Cmpt. ¶¶ 38 and 40.

Leopold also argues that this case involves claims different from those in other Vermont cases involving qualified immunity. He notes that most cases involve a specific tort committed against the plaintiff. Here, however, the complaint alleges a tort against the plaintiffs as taxpayers. While the fact that this is a taxpayer suit is different, it is till a tort case.

Leopold argues that taxpayer suits elsewhere have created a different standard for qualified immunity than in cases involving direct torts against an individual. All but one of the cases he cites, however, did not even mention the term "qualified immunity." The one that does use the term misconstrues the meaning of "good faith" as a subjective, rather than an objective, term. Snyder v. Merkley, 693 P. 2d 64, 65-6 (Utah 1984).[2] Many of the cases predate current law on qualified immunity, and the court concludes as it did before that they are not applicable here.[3]

Alternatively, to the extent that some of the cases cited by Leopold arguably establish a line of authority suggesting a special doctrine of immunity applicable to the

---

[2] This *may* be true in the Elview case as well (Elview v. North Scott Community School District, 373 N.W. 2d 138 (Iowa 1985), but the court presumes that Elview and Lehan (Lehan v. Greg, 135 N.W.2d 80 (Iowa 1965)) intended their references to "good faith" to refer to the objective "reasonable person" test rather than the subjective test, and that they thus reject the older subjective test in Lough v. Estherville, 98 N.W. 308 (Iowa 1904).

[3] One of the cases also seems to undercut Leopold's substantive position, as it notes that "[i]f it were to be established . . . that the city suffered a specific loss because of improper financing procedures, recovery of the amount of such loss might be allowable as against any city official responsible for it." McCarty v. City of St. Paul, 155 N.W. 2d 459, 464 (Minn. 1967).

expenditure of funds by government officials, different from the well-established doctrine of qualified immunity, there are other authorities to the contrary which seem to apply an even stricter test than that of qualified immunity:

> Persons charged with handling public funds are held strictly accountable for those funds. A public official who controls public funds may be held personally liable to repay improperly expended funds if he or she has failed to exercise due care in permitting the expenditure. Some courts . . . have followed a strict liability rule and hold a public official personally liable whenever he or she has permitted expenditures that the public entity is not authorized to make. A public officer is thus strictly liable for loss of public funds received by virtue of office, so that a showing of wrongdoing is not required.

63C Am. Jur. 2d Public Officers and Employees § 339 (West, Westlaw through July 2010). Thus, the court certainly cannot find that Leopold's immunity from suit is clear.

Neither side has cited any case actually discussing the doctrine of qualified immunity in the context of a taxpayer suit such as this. The court, however, has found some cases discussing the issue. One is surprisingly on point. In it, the court addressed a taxpayer suit against a governor for breach of fiduciary duty in connection with the expenditure of public funds. Rayphand v. Tenorio, 6 N.M.I. 575 (N. Mariana Islands, 2003).The court applied the doctrine of qualified immunity, finding that the governor was protected by immunity from some claims but not others. Notably, the court held that immunity was not established on one claim based on overspending the budget because "[n]o rational Governor could read Article III, Section 9(a) [of the constitution] and believe that he was not restrained by the total ceiling of the last previously passed budget, regardless of when such budget was passed." Id. at 596.

Other cases have presumed that the standard qualified immunity doctrine applies to taxpayer standing claims, as well as other citizen suits seeking enforcement of

4

governmental obligations to the citizenry as a whole. Smith v. Jefferson County School Bd. of Com'rs, 549 F.3d 641 (6th Cir. 2008)(resolving the case on grounds of legislative, rather than qualified, immunity), *vacated on other grounds*, 2009 WL 1045462 (6th Cir. 2009); Scarpino v. Grossheim, 852 F. Supp. 798, 803-06 (S.D. Iowa 794)(applying qualified immunity to Iowa Civil Liberties Union's taxpayer claims against prison officials for Establishment Clause violations); Rice v. Cayetano, 941 F.Supp.1529,1551-52 (Hawai'I 1996)(discussing qualified immunity in connection with claims that government officials violated their obligations regarding administration of lands held for the public trust). The court finds nothing to suggest that the doctrine is not applicable when the case is a taxpayer suit as opposed to a standard tort case.

"Good faith exists where an official's acts did not violate clearly established rights of which the official reasonably should have known." Sabia v. Neville, 165 Vt. 515, 521 (1996). "'Clearly established' for purposes of qualified immunity means that '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Sprague, 2005 VT 85, ¶ 5 (citation omitted). "Of course, when we consider state tort liability, the 'clearly established law' is not limited to federal constitutional and statutory rights, but may include Vermont statutes, regulations and common law." Sabia, 165 Vt. at 521 (citation omitted).

Phrased another way, the question of "clearly established law" in this case is as follows: (1) was it clearly established law that a government official must comply with a regulatory entity's order such as the Certificate of Public Good, and (2) could a reasonably competent official in Leopold's shoes have reasonably believed that he did not need to follow such an order. Leopold did not present anything to the court to support a conclusion that the answer to those questions could be favorable to him. While he may

5

do so in the context of a summary judgment motion, he has not done so yet. <u>Fortunati v. Campagne</u>, 2008 WL 220713, *3, No. 1:07-CV-143 (D. Vt. Jan. 25, 2008)("When a party asserts qualified immunity in a motion to dismiss . . . rather than in a motion for summary judgment, . . . the defense faces a formidable hurdle and must accept the more stringent standard applicable to this procedural route.")(internal quotations omitted). The court sees little basis for an appeal on the current record.

<u>Order</u>

The motion for permission to take an interlocutory appeal is denied.

Dated at Burlington this 20th day of October, 2010.

_____
Helen M. Toor
Superior Court Judge